STATE of Missouri, Respondent,

v.

Edward C. WHITE, Appellant.

Edward C. WHITE, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 45389, WD 47203.

Missouri Court of Appeals,
Western District.

Dec. 7, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 1, 1994.

Application to Transfer Denied
March 22, 1994.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BERREY, P.J., and BRECKENRIDGE and SMART, JJ.

BERREY, Presiding Judge.

Appellant was convicted of second degree murder and armed criminal action. He was adjudged a prior and persistent offender and was sentenced to life imprisonment on the charge of second degree murder and 100 years imprisonment on armed criminal action. The trial court ordered the sentences to run consecutively. Appellant also appeals the denial of his Rule 29.15 motion and the appeals are consolidated herein.

Appellant and his friend, Loren Swenson had been drinking the evening of March 22, 1990. Eventually they ended up at Amnesia's, a bar in Clay County. Appellant testified he became "quite drunk" during the course of the evening.

Appellant testified that at the bar he ran into an acquaintance, Bud Jarman. Jarman and Oscar Green were at the bar together. At closing time, Jarman and appellant left the bar. Appellant agreed to give Jarman a ride home. Swenson got in the passenger seat and Jarman got in the back of appellant's car. Oscar Green appeared on the passenger side of the car and said he wanted a ride home. Appellant told him that Jarman was "the only one that's going to ride." Words were exchanged between Green and appellant.

Green went to the driver's side of the car. Appellant testified: "I got scared, turned around and cocked the gun back to just scare the guy away." Appellant testified that Oscar grabbed the gun and twisted it, that appellant saw something shining out of the corner of his eye and Green scratched him behind his ear. Appellant then ducked down and the gun went off and Green fell to the pavement. Jarman exited the car. Appellant drove from the scene accompanied by Loren Swenson. Appellant let Loren off at a gas station in Indian Springs Shopping Center and then drove to his aunt's home where he conferred with his niece Brandi West.

Oscar was shot in the right eye and the bullet passed through the temporal lobe of the brain. There was no exit wound. Green died from the gunshot on April 1, 1990.

Appellant alleges four points of trial court error and one point of motion court error as follows: 1) the trial court abused its discretion in overruling appellant's request for a mistrial after the state inquired if a blood sample had been taken and if appellant had ever talked to a psychiatrist; 2) by overruling appellant's objection to the state's closing argument; 3) by denying appellant's request for a second mental examination; 4) by submitting the reasonable doubt instruction MAI–CR3d 302.04, and 5) that the motion court erred in denying appellant's Rule 29.15 motion alleging ineffective assistance of counsel.

■ Appellant's first point contains two unrelated instances of alleged error that occurred during trial. The first complaint is directed at a question the state asked Dr. Thomas Reardon, a defense witness, on cross-examination.

Reardon had been a physician on duty at the hospital when Green was brought to the emergency room following the shooting. Reardon testified that Green had a strong odor of alcohol on his breath when he arrived at the emergency room. No blood was drawn for the purpose of performing a blood alcohol test. On cross-examination, the prosecutor asked why the test was not conducted on Green. Reardon responded that he did not know why. The prosecutor then asked whether Reardon drew any blood from the defendant for the purpose of a test. Defense counsel objected and the witness responded, "I have not seen the defendant." The court sustained the objection and instructed the jury to disregard the question and the answer. The court denied the defense's motion for a mistrial.

At a later hearing, outside the presence of the jury, defense counsel renewed the request for a mistrial, arguing that the question wrongly implied that defendant had been

asked to submit to a blood test, and had refused to do so. Defense counsel also argued that the request was in bad faith. Counsel argued that the question by the prosecutor had put the defendant in the position of having to testify in order to rebut the inference that defendant had refused to submit to a blood test. The trial court denied the motion for mistrial and denied the motion that the jury be instructed that the question had been improper.

We fail to see how defendant White was damaged by the question and answer heard by the jury. At most, it was a signal from the prosecutor to the jury that the prosecutor thought defendant may have been intoxicated. It certainly did *not* imply that defendant had refused to submit to a blood test, since there was no reason for anyone to believe that Reardon had ever seen the defendant, much less that Reardon had requested that he submit to a blood test. As far as the prosecutor's belief that White may have been intoxicated, defendant White could not have been damaged since there was other evidence in the case, including evidence introduced by defendant himself, that he was intoxicated.

■ Appellant's point I also alleges that the trial court erred in not declaring a mistrial because during the cross-examination of appellant White the prosecuting attorney asked, "now do you recall some conversation with a psychiatrist ...?" The prosecuting attorney's question was interrupted in mid-sentence by appellant's objection and request for a mistrial. The objection to the question was sustained and the motion for mistrial was denied. The trial judge offered to instruct the jury on the unfinished question but appellant's counsel declined the offer.

The objection of defense counsel at trial cited Chapter 552 RSMo 1986. Appellant correctly points out that the chapter prohibits the introduction of statements made by an accused during a court ordered mental examination. However, in this case, the question was not completed, nor was it answered. It strains credulity to consider the suggestion that the partial question "now do you recall some conversations with a psychiatrist ..."

injects so much prejudice into the case as to require a mistrial.

■ Declaration of a mistrial is a drastic remedy that is only granted under very extraordinary circumstances. *State v. Young,* 701 S.W.2d 429, 434 (Mo. banc 1985) *cert. denied* 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986). It is an act of discretion by the trial court and will not be disturbed on appeal absent a clear showing of abuse by the trial court and prejudice to the appellant. *State v. Mahurin,* 799 S.W.2d 840, 844 (Mo. banc 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 90, 116 L.Ed.2d 62 (1991). The trial court having observed the events leading up to the request for mistrial is in the best position to judge the prejudice, if any, that has resulted. *Id.*

Appellant's Point I is denied.

In point II appellant alleges the trial court erred by permitting the state to argue to the jury, 1) that it should send a message to society that the jury was in favor of prosecuting alleged murderers, and 2) for denigrating appellant's defense by arguing that if the jury believed appellant "you could unlock the prison doors if every time that came up and that was swallowed by the jury."

The following exchange took place during the state's closing argument:

[BY MR. STIGALL:]: ... Second of all, defense says he did not know that his conduct was practically certain to cause the death. He didn't intend—I didn't know when I cocked my gun and pointed it at him that it would go off. I didn't know that when my gun is loaded and I've got the hammer back, it's a hair trigger and my finger is on the trigger, and it's pointed at his head, I didn't know that it was going to go off. How many times have we heard that. You could unlock the prison doors if every time that came up and that was swallowed by the jury.

MS. BURNS: Judge, I would object. That's improper argument.

THE COURT: Overruled. Closing argument and the jury will so regard.

MR. STIGALL: If every time that was brought up, you might as well unlock the prison doors and let them out because it's

always I didn't know that it was loaded....

Later during his argument, Mr. Stigall stated:

[BY MR. STIGALL]: ... It's up to you really. You've got to sign the forms. If you want to come back and sign a not guilty and say we don't want you to prosecute the cases—

MS. BURNS: Judge, I'm going to object to that. That's clearly an invasion of the jury's function.

THE COURT: Overruled. Closing argument and the jury will so regard.

MR. STIGALL: If you want to say not guilty, he didn't mean to do it, he was afraid, all that stuff, then just sign the not guilty form and tell law enforcement we don't want to prosecute these cases any more. When this happens at 2:30, just hose down the parking lot, get the body bag, carry them off, and we all go home. Don't bring these cases to us. Let's just concede North Antioch at 2:30 in the morning to these people. Let's not prosecute them.

"To preserve any error in a ruling on an objection to the admissibility of argument it is fundamental that the objection be specific and give a valid reason so that the trial court is afforded an opportunity to rule on this point." *State v. Haas*, 610 S.W.2d 68, 71 (Mo.App.1980). "Objections to evidence and argument must be specific." *State v. Jones*, 806 S.W.2d 702, 705 (Mo.App.1991). Appellant's first objection was, "Judge I would object. That's improper argument." The statement "that's improper argument" is too general and nonspecific to preserve the issue for appellate review. *State v. Beatty*, 849 S.W.2d 56, 61 (Mo.App.1993).

Appellant's second objection was, "Judge, I'm going to object to that. That's clearly an invasion of the jury's function." Such objection preserves nothing for review. A prosecutor is allowed to discuss the prevalence of crime in the community, the personal safety of its residents, and the jury's duty to uphold the law as well as inferences from its failure to convict. *State v. Crenshaw*, 852 S.W.2d 181 (Mo.App.1993).

Appellant's Point II is denied.

Appellant's point III alleges the trial court abused its discretion by denying his oral request for a second mental examination. Appellant alleges the examining physician testified that the "appellant could possibly suffer from a mental disease or defect." Appellant also alleges the physician stated he was unable to determine whether such a condition existed and that by further testing such determination could be made. Chapter 552, RSMo (1986) pertains to criminal proceedings involving mental illness. Appellant was examined pursuant to the trial court's order in accordance with § 552.020 RSMo (1986) following appellant's plea of not guilty by reason of mental disease or defect. The results of the mental examination were filed on February 22, 1991 and copies of the results delivered to the attorney of record on March 1, 1991. A second mental examination pursuant to § 552.020(6), (7) RSMo 1986 was not timely sought by appellant because he did not file a written request within ten days after the filing of the report for an order granting a second examination.

The appellant was examined by Sam Parwatikar, M.D., a board certified psychiatrist. Dr. Parwatikar is a psychiatric consultant at the Fulton State Hospital, and in this capacity he examined appellant. Dr. Parwatikar testified he examined appellant and the appellant gave three accounts of the incident; 1) he shot deceased in self-defense because he was coming at him; 2) a voice told him to kill somebody and have fun, and 3) that the deceased was his girlfriend's ex lover and he did not like her going out with him. Parwatikar found three symptoms; 1) he did not remember; 2) he heard voices, and 3) he became angry towards the end of the interview. As a result of the interview which lasted approximately 35 minutes Dr. Parwatikar reviewed all material possible, including police reports and past history, to determine whether appellant had received any previous treatment for a mental illness.

Parwatikar stated that appellant's descriptions of his alleged hallucinations did not fit the norm. The appellant could not state how long he had had hallucinations or explain

what effect they had on his behavior. Dr. Parwatikar also reviewed an extensive social history given by appellant to Mr. Skouby, a social worker at Fulton and an evaluation by Dr. Cason and Mark Schmitz, psychologist. As a result of this examination and subsequent review of appellant's records, Dr. Parwatikar concluded appellant did not have a mental disorder but was in fact malingering. Parwatikar stated that appellant did not have a mental disease or defect within the meaning of Chapter 552, that appellant could understand the nature of the charges against him and assist his attorney in his defense. Parwatikar further opined that appellant was not suffering a mental disease or defect at the time of the alleged offense, and that appellant did not require hospitalization pending the criminal proceedings. Appellant's counsel completely and artfully explored Dr. Parwatikar's testimony on cross-examination. Dr. Parwatikar testified on cross examination that further testing of the appellant, for organic brain problems, would not alter his opinion as to the competency and responsibility of appellant.

Dr. Parwatikar stated that if the appellant cooperated with him he might change his opinion as to "responsibility." Parwatikar stated:

> ... if I could get the organic tests positive and if he were to give me a detailed account of what exactly happened that would have triggered his actions, it may cause me to say that he may have diminished capacity, not that he did not know right from wrong but he may have had some difficulty in controlling his temper if the circumstances were appropriate. I did not have any of this.

The doctor acknowledged that if certain tests were performed and the results were positive his opinion would be affected. However, no one inquired as to what the effect on his opinion would be.

■ The trial court has broad discretion to grant or deny a request for a second psychiatric examination that is not timely filed. *State v. Gilmore*, 681 S.W.2d 934, 940 (Mo. banc 1984). Here, the request for a second examination was made orally by appellant's counsel wherein she stated "Before we move on, I just want to note on the record that I am requesting additional testing for Mr. White." Counsel did not file a written request for a second examination as required by § 552.020.6 RSMo (1986). In any event, defendant had one mental examination, and was less than cooperative in that examination. The trial court did not abuse its discretion in denying this oral request for another mental examination.

Appellant's Point III is denied.

In Point IV appellant alleges the motion court erred in denying his 29.15 motion for post-conviction relief. Appellant argues that his rights to effective assistance of counsel were denied in that his trial counsel failed to 1) call Brandi West as a witness or make an offer of proof regarding her proposed testimony; 2) object to Detective DeVulkenaire's testimony that appellant threatened to "kick his ass"; and 3) object to the prosecution's closing argument that there was no gunpowder residue on the victim's hands.

■ In order to establish that a conviction must be set aside due to ineffective assistance of counsel, a movant must show by a preponderance of the evidence, 1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstance and 2) that he was prejudiced by the deficient defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Leisure v. State*, 828 S.W.2d 872, 874 (Mo. banc 1992), *cert. denied*, 506 U.S. ——, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). To show prejudice, the movant must demonstrate "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In a 29.15 motion appellate review is limited to determining whether the findings, conclusions, and judgment of the hearing court are clearly erroneous. *Leisure*, 828 S.W.2d at 874; Rule 29.15(j).

■ Appellant first contends that his attorneys were ineffective for failing to make an offer of proof regarding the proposed testimony of Brandi West. In addition, appellant claims his attorneys compounded

their error by failing to call Brandi West as a witness.

Appellant originally sought to present Ms. West's testimony in order to inject the defense of self-defense without calling the appellant as a witness. Prior to trial, the court sustained a motion in limine to exclude the self-serving portions of the appellant's statements to Ms. West in which he insisted the shooting was an accident or in self-defense. The court qualified the order by stating that Ms. West could still be called as a witness, but she would not be allowed to testify as to any self-serving statements made by appellant. The appellant's trial attorneys decided there were problems with Ms. West's testimony and that there was no longer any reason to call her as a witness.

■ "The selection of witnesses and the introduction of evidence are questions of trial strategy." *Leisure*, 828 S.W.2d at 875. The decision not to call a witness to testify, as a matter of trial strategy, is virtually unchallengeable. *Id.* The defendant's attorney will not be deemed ineffective for failing to present the testimony of a witness whose testimony would have been inadmissible, *State v. Twenter*, 818 S.W.2d 628, 638 (Mo. banc 1991).

Appellant argues that even if Ms. West could not have legally testified as to appellant's self-serving statements, she still could have testified that appellant appeared to be "shaken up" and "upset" several hours after the shooting. The fact that appellant was "shaken up" and "upset" after the shooting does not provide the appellant with a viable defense. A person who shoots someone deliberately is just as likely to be "shaken up" and "upset" as a person who shoots someone accidentally or in self-defense.

Appellant's self-serving statements made to Ms. West are inadmissible because they were not res gestae statements. *State v. Washington*, 632 S.W.2d 261 (Mo.App.1982). Trial counsel was not ineffective for failing to make an offer of proof as to Ms. West's testimony, nor for declining to call her as a witness.

■ In Point IV appellant also alleges that his trial counsel was ineffective for fail-

ing to object to the testimony of Detective DeVulkenaire that appellant had threatened to "kick his ass." Appellant asserts that the testimony prejudiced him by exposing the jury to unrelated, uncharged misconduct and did nothing to establish guilt of the crimes charged.

■ The mere failure to object, even to inadmissible evidence, does not demonstrate incompetence. *State v. Lumpkin*, 850 S.W.2d 388, 395 (Mo.App.1993). Whether to forego the opportunity to make a marginal objection is a question of trial strategy. *Id.* One of appellant's attorneys testified that she did not object to the testimony because she felt an objection would be without merit and would draw the jury's attention to the testimony.

■ Evidence that the accused threatened a witness is admissible as evidence of consciousness of guilt. *State v. Chunn*, 701 S.W.2d 578, 585 (Mo.App.1985). Appellant's threatening remarks are inconsistent with the demeanor of an innocent person who in self-defense accidentally shot someone. The testimony is admissible and appellant's attorney cannot be faulted for making a meritless objection. *Lumpkin*, 850 S.W.2d at 395.

Appellant also asserts that trial counsel was ineffective for failing to object to the state's closing argument, "[i]f Green has got the gun, where is the gunpowder on Green's hand. If he's holding onto the gun as it's going off, where is the residue on his hand."

■ The defense may not argue a negative inference from the state's failure to present evidence, unless it is established that a search for such evidence was made. *State v. Holmes*, 654 S.W.2d 133, 137 (Mo.App.1983); *State v. Simpson*, 611 S.W.2d 556, 560 (Mo.App.1981).

■ The state is permitted to argue a defendant's failure to produce evidence which could be reasonably expected to favor him. *State v. Perry*, 820 S.W.2d 570, 574 (Mo.App. 1991). The state has the right to argue the evidence and all reasonable inferences, including the right to argue that the defense has presented "no evidence" on a particular point. *Ellis v. State*, 773 S.W.2d 194, 198

(Mo.App.1989). There is no apparent justification, however, for applying the rule prohibiting argument emphasizing a failure to present specific evidence when the existence of such evidence is unknown only for the benefit of the state, and not for the benefit of a criminal defendant. An equal application of the rule would be consistent with the rule of law on a similar evidentiary issue. A party cannot argue a negative inference from an opposing party's failure to call a witness unless it is shown that the party is peculiarly available to the opposing party. *State v. Gillis,* 807 S.W.2d 513, 517 (Mo.App.1991). This principle is applicable to both the state and criminal defendants. The rationale behind this rule is analogous to the issue in the instant case, that is, to prohibit argument which misleads the jury as to the facts.

■ The comments of the prosecutor were objectionable, but the holding of the motion court should be affirmed. Unless the failure of defense counsel to object to the improper argument results in prejudice to the appellant, the trial court's ruling will not be disturbed. *State v. Baker,* 741 S.W.2d 63, 66 (Mo.App.1987). To demonstrate prejudice a movant must establish a reasonable probability that, but for counsel's failure to object, the outcome of the trial would have been different. *State v. Leisure,* 828 S.W.2d 872, 874 (Mo. banc 1992). Here, the evidence was such that defendant has failed to demonstrate that, even if a proper objection had been made, the result would have been different.

Point IV is denied.

Appellant alleges the trial court erred in submitting Instruction No. 4 patterned after MAI–CR3d 302.04, the reasonable doubt instruction.

■ This point raised in virtually every criminal appeal coming to this court and has been consistently denied. Appellant's contention is that MAI–CR3d 302.04 lowers the reasonable doubt standard. The Missouri Supreme Court has held the reasonable doubt instruction appropriate. It does not lower the state's burden of proof. *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755,

100 L.Ed.2d 217 (1988). Where there is an approved MAI instruction it must be given to the exclusion of any other instruction. *State v. Rogers,* 825 S.W.2d 49, 54 (Mo.App.1992).

Appellant's Point V is denied.

Judgments affirmed.

All concur.