**STATE of Missouri, Respondent,**

v.

**Clifton FREY, Appellant.**

**Clifton FREY, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 44964, WD 48337.**

Missouri Court of Appeals,
Western District.

Feb. 21, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 1995.

Application to Transfer Denied
May 30, 1995.

Rosalynn Koch, Office of the State Public Defender, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, P.J., and LOWENSTEIN and HANNA, JJ.

HANNA, Judge.

The defendant, Clifton Frey, was convicted of the class B felony of rape, § 566.030, RSMo 1986, following a trial by jury. The jury assessed punishment at eight years imprisonment and the court entered judgment accordingly. The defendant filed his Rule 29.15 motion claiming ineffective assistance of counsel.

On appeal the defendant raises four points, the first three related to his criminal trial and the fourth related to his Rule 29.15 motion's claim of ineffective assistance of counsel. One point in the criminal case challenges the sufficiency of the evidence to support the verdict, and the other two points relate to the admissibility of evidence—one involving prior uncharged crimes and the other concerning hearsay testimony.

The evidence showed that just before 6:00 a.m. on June 5, 1989, while Ms. Lillie Kay Salts was sleeping, the defendant entered her room at the Woodlawn Estates Nursing Home. The defendant, who was employed as a staff member at the nursing home, closed the door, removed Ms. Salts' nightgown, pulled down her underwear and raped her on the bed. She "told him to quit it" and struggled with him "[p]retty hard," but the defendant continued stating, "this feel[s] good. This feel[s] good. If you don't let me, I'll kill you." Ms. Salts testified that she screamed and hollered but no one came to her aid.

Ralph Price, another resident of the nursing home, testified that he heard Ms. Salts screaming and noticed that the door to her room was cracked open slightly. He walked into the room and observed the defendant lying on top of Ms. Salts on her bed, "sticking his thing in her." However, he did not attempt to help or summon help.

After the defendant left, Ms. Salts testified that she went into the hallway and screamed for help but no one came to her assistance. When she told the operators of the nursing home, Melvin and Darlene Matlock, what had happened, they refused to believe her.

Ms. Sharon Jones shared a bedroom with Ms. Salts at Woodlawn Estates in the winter of 1988. She testified that the defendant, on two other occasions, had entered the room at bedtime and felt their stomachs and chests under their bedclothes, supposedly to check them for fever.

Ms. Jones further testified that, in December 1990, approximately 3½ months before the trial, the defendant had accosted her in an alley near her apartment in Rolla, Missouri. She testified that he grabbed her, scratched her face with something and told her, "He did not want [her] to testify against him." Elwood Rapier, a Rolla police officer, said that Ms. Jones was seated in a folding chair with her hands covering her face when he arrived at the scene. She appeared to be upset and when she removed her hands from her face, he noticed several minor lacerations and scratches on her face.

■ The first claim of error goes to the trial court's ruling on the defendant's motion for judgment of acquittal challenging the sufficiency of the evidence to support the conviction of forcible rape. The defendant argues that the evidence presented was contradictory and insufficient to sustain a finding of guilt beyond a reasonable doubt that he raped Ms. Salts. In determining the sufficiency of the evidence, we accept as true all evidence favorable to the state, including all favorable inferences drawn from the evidence, and we disregard all contrary evidence and inferences. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). An appellate court does not weigh the evidence, *State v. Lindsey*, 868 S.W.2d 114, 116 (Mo.App.1993), nor do we determine the reliability or credibility of witnesses. *State v. Middleton*, 854 S.W.2d 504, 506 (Mo. App.1993). The question presented is whether there was substantial evidence from which a trier of fact can reasonably find the issue in harmony with the verdict. *State v. Martin*, 852 S.W.2d 844, 849 (Mo.App.1992).

■ The defendant argues that the victim's testimony was inconsistent, specifically as to the precise time the rape occurred, what she was wearing, whether she was asleep when the defendant first entered her room and what action she took immediately after the rape. Ms. Salts first testified that she was asleep when she first noticed the

defendant and later testified that the defendant laid her down on the bed and would not let her get up. She first testified that she was wearing slacks at the time of the crime and later testified she was wearing a gown and that the defendant pulled it off. She testified that the incident occurred right before 6:00 a.m. and then testified that it occurred at 4:00 a.m. With respect to her actions following the incident, she first testified that she got out of the bed after the defendant left the room, got dressed and went down the ramp that was by her room. Her later testimony was that when she was able to get out of her room, she stood by the door and hollered, "Help. Help. Melvin, come and get him out of this room." Finally, she testified that she first reported the rape to the Matlocks "the next morning" and later stated that she told them Tuesday evening "after I came in from workshop." The defendant argues that these inconsistencies left the victim's testimony so unconvincing and clouded with doubt that it needed corroboration in order to sustain the conviction. *See State v. Kuzma*, 751 S.W.2d 54, 58 (Mo.App. 1987). If the inconsistencies in the victim's testimony leave her testimony unconvincing and clouded with doubt, corroboration is required. *State v. Smith*, 679 S.W.2d 899, 902–03 (Mo.App.1984). The defendant acknowledges that the state did present Mr. Ralph Price's testimony, which was corroborating testimony.

■ The defendant, citing *Kuzma*, 751 S.W.2d at 58, claims that the "corroboration rule must be invoked." He further argues that Mr. Price's testimony was not corroborative in that it was substantially different from that of the victim. We will not detail Mr. Price's testimony as we hold that corroboration, i.e., Mr. Price's testimony, was not necessary to sustain the verdict. The corroboration rule does not apply when the inconsistencies or contradictions in the victim's trial testimony involved "proof not essential to the case." *State v. Gardner*, 849 S.W.2d 602, 604 (Mo.App.1993). The inconsistencies which appeared in this victim's testimony are no more than those matters that a jury is called upon to decide when determining the sufficiency of the evidence and the credibility of the witness. As a matter of law they do not rise to the level of the inconsistencies that destroy the witness's testimony. It frequently occurs that a witness's testimony, during the course of a witness's recitation of the facts, falls into inconsistencies or contradictions concerning minor points of a nonessential nature. *See State v. Nelson*, 818 S.W.2d 285, 289–90 (Mo.App.1991). This does not destroy the case. It is left for the trier of fact to believe all, some, or none of the witness's testimony in arriving at a verdict. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). It is the trier of fact's responsibility to resolve those contradictions or conflicts in the victim's testimony. *Id.* The testimony of a single witness is ordinarily sufficient to constitute substantial evidence and to make a submissible case. *State v. Sumowski*, 794 S.W.2d 643, 645 (Mo. banc 1990).

In this case, Ms. Salts testified positively that in the early morning hours of June 5, 1989, the defendant entered her room and forcibly raped her on the bed in which she had been sleeping. The inconsistencies regarding the precise time, the clothing she was wearing and other minor details do not involve contradictions or inconsistencies that "go directly to an essential element of the state's case." *Gardner*, 849 S.W.2d at 604. Point denied.

■ The defendant raises the next point under the plain error doctrine pursuant to Rule 30.20. He complains that the court should have, *sua sponte*, excluded the testimony of Ms. Jones, the victim's roommate. Ms. Jones testified that the defendant touched her under her bedclothing before the incident in question and, 3½ months before trial, assaulted her and threatened her to prevent her from testifying against him. Although the defendant's counsel has raised this point under the plain error doctrine, the point was in fact properly preserved and should be reviewed as trial error and not under the plain error doctrine.

Before trial, the defendant, through his public defender counsel, filed a motion to test the competency of witness Jones and also filed and argued a "Motion in Limine to Exclude Evidence of Offenses and Acts Not

Charged." The latter motion, which was overruled by the court, raised the acts alleged to have been committed by the defendant upon Ms. Jones. The record reflects that the matter was in fact preserved, *sua sponte,* by the court.

When Ms. Jones was called as a witness the following colloquy took place between the court, Mr. Beger, the assistant prosecuting attorney, and Ms. Unterreiner, the assistant public defender.

> Mr. Beger: Call Sharon Jones, your Honor.
>
> *  *  *  *  *  *
>
> Court: Is this a witness who's going to testify on the earlier event?
>
> (Mr. Beger nodded.)
>
> Court: Can we just have an understanding that she's objecting to this so she won't have to come up here and do this?
>
> Mr. Beger: Yes.
>
> Ms. Unterreiner: Continuing objection as well.
>
> Court: Just don't want to interrupt—
>
> Mr. Beger: State will agree that Defendant's objection will be continuing. Don't need to be otherwise stated.
>
> Court: Fine.

The court wanted the testimony of Ms. Jones to proceed uninterrupted. The court, assistant prosecuting attorney and defense counsel all agreed that the objections raised in the motion in limine would be preserved and would be continuing throughout her testimony. Our review should be as though the matter was properly preserved.[1]

One piece of evidence about which the defendant complains was Ms. Jones' testimony that some time more than one year[2]

before the assault upon Ms. Salts, the defendant entered the room that Ms. Jones and Ms. Salts shared and felt Ms. Jones' stomach and chest.[3] Ms. Jones said this happened on two occasions. Ms. Salts did not testify about these matters. This testimony was offered to prove that defendant committed the rape upon Ms. Salts. The second piece of evidence challenged by defendant was Ms. Jones' testimony that the defendant physically assaulted and threatened her shortly before the trial.

■■■ The state acknowledges that the admissibility of the testimony regarding the defendant's prior sexual assaults upon Ms. Jones, without some nexus to Ms. Salts, would appear questionable in light of the holding in *State v. Bernard,* 849 S.W.2d 10 (Mo. banc 1993). It is the state's argument that since Ms. Jones' testimony also included the same action by the defendant upon Ms. Salts, it is admissible because the events occurred contemporaneously with assaults on the eventual rape victim and in the same room. Further, the state claims this testimony gave meaning and context to the defendant's subsequent physical assault of Ms. Jones and his warning to her that she should not testify against him. We address and rule only the admissibility of Jones' testimony that the defendant felt her stomach and chest under her bedclothing.

■■■ The testimony of the physical assault against Ms. Jones approximately 3½ months before trial was evidence that demonstrated the defendant's consciousness of guilt. Evidence that an accused threatens a witness is admissible as evidence of his consciousness of his guilt. *State v. White,* 870 S.W.2d 869, 875 (Mo.App.1993). However, we do not follow the state's argument that

---

**1.** The dissent maintains there was no ruling by the trial court and, therefore, the point was not preserved. It is not our purpose to change the rule requiring a ruling by the trial court or to liberalize the standard of review. Considering the court's remarks and in light of the interlocutory ruling on the motion in limine, it is apparent that the court's ruling on the motion in limine was understood by the parties and the court to apply to the witness's testimony in court. All proceeded on that basis, and it would be inappropriate for us to consider the court's ruling otherwise.

**2.** The date was only described as the winter of 1988. Ms. Jones resided at the nursing home during 1987 through February 1988. The rape occurred June 5, 1989.

**3.** There was also Ms. Jones' testimony, noted in the dissent, that the defendant did the same thing to Ms. Salts. On remand, we anticipate that this testimony would be admissible.

the first incident was somehow a threat and therefore admissible to confirm the subsequent admittedly threatening assault. The state does not cite us to any cases that would allow uncharged acts or crimes against a third party to be admissible because they were contemporaneously committed against the victim. If the acts against a third party are admissible, it is not because they occurred contemporaneously, but rather as an exception to the well established general rule of law prohibiting the evidence of uncharged acts which is designed to prove the defendant's propensity to commit the crime for which he is charged.

■■■ "Evidence is relevant only if it tends to prove or disprove a fact in issue or it corroborates other material evidence." *State v. Allen,* 829 S.W.2d 524, 527 (Mo.App.1992). Evidence of a prior crime is inadmissible without some showing of special circumstances, which were summarized in *State v. Sladek,* 835 S.W.2d 308 (Mo. banc 1992). An uncharged act is admissible when it tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with the commission of the crime on trial. *Id.* at 311; *see also Bernard,* 849 S.W.2d at 13.

The evidence that the defendant felt the stomach and chest of Ms. Jones did not go to show motive or intent, nor was it proof of the absence of mistake or accident. Identity was not an issue in the case. Additionally, these incidents did not involve a common scheme or plan and were not part of the same "general criminal enterprise." *State v. Buxton,* 324 Mo. 78, 22 S.W.2d 635, 637 (1929).

Our Supreme Court has spoken on the subject of the admissibility of prior uncharged acts, wrongs or crimes. When the exception to evidence of other uncharged acts was first introduced by Judge Thomas in his concurring opinion in *Sladek,* he denominated it "signature modus operandi/corrobo-

ration" [4] and warned repeatedly against the dangers of the application of the rule being "relaxed to the point where the exception does away with the rule." *Id.* at 317. Judge Thomas carefully cautioned against the danger of the exception becoming "a slippery slope by which the general rule of exclusion gradually disappears case by case." *Id.*

Sladek was convicted of first degree sexual assault and first degree deviate sexual assault of his dental patient after placing her under nitrous oxide in order to treat her dental problem. The state presented evidence from three former female patients describing his conduct toward them. They each testified that while they were in the dental chair he placed his hand or forearm on their breasts. The Supreme Court held that this evidence had no tendency to prove that Sladek sexually assaulted the victim in the case at trial. *Id.* at 312. In *Sladek,* the prior acts were that the dentist had fondled the breasts of the three patients. Here, we are confronted with the act of the defendant placing his hand on the stomach and chest of Ms. Jones, under her bedclothing. In *Sladek,* those acts were ruled inadmissible to prove he raped and sodomized a later patient. In this case, the prior acts are inadmissible to prove that Frey raped the roommate. The *Sladek* holding controls the decision in this case.

The *Bernard* court adopted the signature *modus operandi*/corroboration exception to the rule prohibiting evidence of prior uncharged misconduct after it was first suggested in the concurring opinion in *Sladek.* The holding of *Bernard* would also exclude the evidence in this case. The Supreme Court stated that the evidence of the prior crimes must be more than merely similar in nature to the sexual assault for which the defendant is charged. *Bernard,* 849 S.W.2d at 17. It "should be nearly identical to the charged crime and so unusual and distinctive as to be a signature of the defendant's *modus operandi.*" *Id.* The adoption of the excep-

---

4. The corroboration exception involves reasoning based upon the defendant's propensity to commit the crime charged. See *Sladek,* 835 S.W.2d at 314–15 (Thomas, J., concurring). This is the very reason that caution in application is critical because the exception can too easily engulf the rule.

tion was specifically done subject to the constraints delineated above. *Id.*

In *Bernard,* the court only allowed one type of prior uncharged act to be admissible and excluded all of the others. The victim in *Bernard* testified that the defendant asked him to take off his clothes and run around the defendant's car or, if not, to walk around the car in his underwear. Four boys, unrelated to this crime, testified to events that had occurred ten years earlier. Their testimony showed that the defendant had a preference for naked or partially clothed boys in motion on or around an automobile in motion. The Supreme Court held that this conduct amounted to a "signature" of the defendant's conduct and was admissible. *Id.* at 19.

The Supreme Court specifically excluded other testimony given by the four boys, even though it had "strains of commonality with events in the case at trial." *Id.* at 19–20. It is the exclusion of the other uncharged acts which give us direction in this case. For example, Bernard arranged for the victim to sleep over with him and took a photograph of the victim in his underwear. The state argued unsuccessfully for the admission of evidence that Bernard had previously possessed nude photographs of other members of this youth group and that the defendant had arranged for the four other boys to sleep over with him in order to abuse them sexually. The court described this conduct as "similar, even nearly identical," but held that it "[was] not so unusual and distinctive as to be a signature of [defendant's] *modus operandi.*" *Id.* at 19.

The *Bernard* court adopted Judge Thomas' cautionary observations when applying this rule of corroboration evidence:

> [A]lthough we have called this exception corroboration, it really involves reasoning from the signature modus operandi based upon the propensity of the defendant to commit this type of crime to the conclusion that the defendant committed the crime charged. This reasoning goes squarely against the rationale for the general rule. This makes it particularly important that the requirement for a signature modus operandi be strictly enforced.

*Id.* at 17 (*quoting Sladek,* 835 S.W.2d at 317 (Thomas, J., concurring)).

The act of putting a hand on Ms. Jones' stomach and chest under her bedclothing is neither similar nor nearly identical to the crime of rape or the events surrounding the rape. The similarity must be between the prior uncharged act and the present crime. None exists. Additionally, the uncharged act can hardly be described as so unusual and distinctive as to be a "signature" (similar to a fingerprint) of the defendant's conduct. The examples of *Bernard* and *Sladek* clearly direct exclusion of the prior act of wrongdoing against Ms. Jones. The trial court erred by admitting this evidence.

■ Viewing the evidence of prior uncharged crimes, the admission was error and the question is whether the evidence was prejudicial. Because of the substantial risk of other crime evidence and the *Bernard* and *Sladek* cases, we conclude that the evidence was prejudicial and the judgment should be reversed and the case remanded for a new trial. The general rule of law prohibiting the admission of uncharged acts, which is designed to prove the defendant's propensity to commit the crime for which he is charged, should be followed.

■ Finally, we address the last claim of error because it may recur on retrial. This point concerns the rebuttal testimony of Ms. Melinda Reary that she overheard a statement made by Mr. Matlock.

While investigating the rape, the deputy sheriff interviewed Mr. and Mrs. Matlock, the owners of the nursing home. During the cross-examination of Ms. Darlene Matlock, the assistant prosecuting attorney asked her if she had overheard her husband tell the Phelps County deputy sheriff that the victim never lied about this sort of thing. She replied that she had been there but did not recall him saying that.

After the close of the defendant's evidence, the state offered the rebuttal testimony of Ms. Reary, the case manager for the sheltered workshop, who said she was present during the interview. She testified that Mr. Matlock "indicated that, to his knowledge, [the victim] had never lied or anything like

that in the past." At that time the defense attorney objected that her statement was hearsay.

A hearsay statement is any out-of-court statement offered to prove the truth of the matter asserted. *State v. Shurn*, 866 S.W.2d 447, 457 (Mo. banc 1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). The state argues that the evidence is admissible under the frequently repeated explanation that the evidence was not offered to prove the truthfulness of the statement, but rather only to prove that the statement was made.

Whether the statement was made is of no importance or relevance. It was not only improper rebuttal evidence, it was clearly offered to prove the truth of the substance of the statement—that Mr. Matlock had never known the victim to lie. A good example of this can be seen in *State v. Chambers*, 891 S.W.2d 93, 104 (Mo. banc Dec. 20, 1994). That case discusses two out-of-court statements, one hearsay because it was offered to prove the truth of the statement, and one not hearsay because it was offered to prove state of mind.

Whether Mr. Matlock made the statement is not relevant to any issue in the case. The last witness to testify in the case was allowed to improperly bolster the victim's character for truthfulness. The court erred in admitting the testimony over defendant's objection. Because our decision is reached on other grounds, we do not decide the prejudicial effect of this evidence. Our review of this point is to prevent the matter from occurring on retrial.

It is not necessary to address the final point of error concerning the trial court's denial of the defendant's 29.15 motion. The judgment of conviction is reversed and the cause is remanded for a new trial.

ULRICH, J., concurs.

LOWENSTEIN, J., dissents in separate dissenting opinion.

LOWENSTEIN, Judge, dissenting.

I respectfully file this dissent, as I would affirm the conviction.

Frey properly sought plain error review on the question of the admissibility of testimony of witness Jones. (Both as to her testimony of having Frey feeling under her night clothes, as well as corroborating the victim's testimony about the same conduct.) However, this court affords Frey the more lenient standard of trial error review.

At the very outset, it should be noted the Jones' testimony concerns three separate subjects: 1) the improper touching of Jones; 2) the touching of Salts; and 3) the physical attack and threats on Jones, a witness in Frey's criminal case set three and one-half months hence. The majority discusses all of the issues. Although the statements of the trial judge quoted on page 6 of the majority opinion are confusing, and refer to a singular "event," there is no indication the court was taking up the totally separate issue of Jones' testimony about the defendant's attack on her, a witness in a criminal trial. An attack on, or threats to witnesses in a criminal trial, which will be discussed separately at the end of the dissent, is not kept out on the objection of irrelevancy, and is admissible as consciousness of guilt. Although the attack on witness Jones is discussed in the majority opinion, it does not rule if the trial court actually erred in admitting this evidence. Similarly, the majority discusses the Jones' testimony corroborating the defendant's feeling under Salts' bed clothing; but does not reverse on that point.

As the majority points out at trial, the court interceded and prompted a pre-trial objection (in the form of a motion in limine) to be continued. What the trial court did not do was to the rule on the objection it had just coaxed. As this court said in *State v. Rodney*, 760 S.W.2d 500, 504–05 (Mo.App.1988), "[I]n order to presume an allegation of error on appeal, there must be a proper objection *and* there must be an adverse ruling." (Emphasis in original). See also; *State v. Holland*, 530 S.W.2d 730, 733 (Mo.App.1975). Even if Frey had requested a trial ruling, and the judge had ruled as the majority decides, this precise issue would still be assigned to plain error review, for Frey asked for no specific relief prior to an adverse verdict. For the rule states, where a defen-

dant gets all the relief asked for; i.e., the objection being sustained, "... nothing further is presented for review." *State v. Fleischer,* 873 S.W.2d 310, 315–16 (Mo.App. 1994).

The end result on this record is the objection was not ruled on, nor was there any relief requested; therefore, review is under Rule 30.20, and relief should be granted only if the trial court's action resulted in a manifest injustice or a miscarriage of justice. *State v. Childs,* 876 S.W.2d 781, 784 (Mo.App. 1994).

Assuming the Jones' testimony that Frey, the person assigned to watch patients during the night at this home for persons with mental disabilities and behavioral disorders, had, on at least two occasions, come into the room at bedtime and felt Jones' and Salts' stomachs and checks to check them for fever, was impermissible, under plain error review, and relief should not result in a new trial. The testimony of the victim and other witnesses, plus the attack and threat as to witness Jones, points overwhelmingly to guilt. I disagree with what the majority really concludes: 1) the objection to Jones' testimony about the conduct of the defendant towards her was preserved; and 2) that evidence was received in error, and standing alone should result in a new trial.

## I.

[a] I do not feel the admission of Jones' testimony concerning Frey's touching of her under her bedclothes constituted trial error. If *State v. Sladek,* 835 S.W.2d 308 (Mo. banc 1992) (Thomas Concurring) were the latest case from our high court, this position would be untenable. *State v. Bernard,* 849 S.W.2d 10 (Mo. banc 1993) carved out exceptions in the area of uncharged crimes, as relevant here, which makes Jones' testimony admissible. *Bernard* was a ground-breaking opinion of the Supreme Court of Missouri where the testimony of several youths was at issue. One had charged a former pastor with a sex offense, including attempted sodomy, and the prosecution wanted several other alleged victims (who had not pressed charges) to testify as to the defendant's prior actions towards them. The testimony of the others was the

same as the victim's ... that Bernard had asked the other boys to take off their clothes and run around his car, or if not, to walk around the car in their underwear. The Court held where the uncharged offenses or conduct involved different victims at a different time or place from the charged offense, the traditional common scheme or play exception does not apply. However, the Court in *Bernard* went on to recognize a related exception known as the signature modus operandi/corroboration exception. *Id.* at 13. The signature modus operandi/corroboration exception permits admission of a very limited class of evidence which is used to corroborate a victim's story. *State v. Conley,* 873 S.W.2d 233, 236 (Mo. banc 1994); citing *Bernard,* 849 S.W.2d at 10.

The signature modus operandi/corroboration exception can be described as follows: In a case involving a sex crime, evidence of **defendant's prior uncharged sexual misconduct with someone other than the victim** of the charge on trial, may be admissible even if it does not neatly fit into one of the five common exceptions. To be admissible as signature modus operandi/corroboration evidence, it must prove any "material fact" and have "some legitimate tendency to directly establish the defendant's guilt of the crime charged." *Bernard* at 19; citing *State v. Sladek,* 835 S.W.2d 308, 317 (Mo. banc 1992). When such is the case, this exception permits the state to show the defendant as the culprit who committed the sexual crime charged, by showing that the defendant committed other uncharged sexual acts that are sufficiently similar to the crime charged in time, place and method. *Bernard* at 19; *Sladek* at 317.

As pointed out in the principal opinion, the roots of this exception are found in Judge Thomas' concurring opinion in *State v. Sladek,* 835 S.W.2d at 308 (Thomas, J. concurring). In the context of signature modus operandi/corroboration, to function as corroboration, evidence of prior crimes must be both logically and legally relevant. It is **logically** relevant in that it has a legitimate tendency to prove a material fact in the case by corroborating the testimony of the victim as to the sexual assault. *Bernard,* at 17; *Sladek,* at 314. A sex offense trial often

becomes a credibility contest between the defendant and the victim. *Bernard*, at 17. Evidence of prior crimes in such situations is probative on that issue. *Id.* However, evidence of prior crimes is **legally** relevant, thus making it admissible, only if the probative value of the evidence outweighs its prejudicial effect. See *Sladek*, 835 S.W.2d at 314–15 (Thomas, J. concurring). For corroboration evidence to be legally relevant, the evidence must be more than just merely similar in nature to the sexual assault for which the defendant is charged. *Bernard*, at 17. Evidence of prior sexual misconduct that corroborates the testimony of the victim should be nearly identical to the charged crime, and so unusual and distinctive as to be a signature of the defendant's modus operandi. *Bernard*, at 17; *Sladek*, at 314–15.

As for the questioned testimony in *Bernard*, the court found that Bernard's conduct "involving his preference for naked or partially clothed boys in motion on or around an automobile is more than merely similar in nature to the sexual assault with which he was charged; it operated as a 'signature' of his involvement in both crimes." *Id.* at 19. "His (Bernard's) conduct is so unusual and distinctive as to 'earmark' it as the conduct of the accused and, thus, to corroborate the testimony of the victim in the present case." *Id.*

*Bernard* went on to address the time issue between the uncharged acts and the charged crime. In *Bernard*, the uncharged acts occurred between 12 and 13 years prior to the trial of the charged offense; however, the court found the remoteness was outweighed because they were nearly identical incidents so unusual and distinctive as to corroborate the victim's testimony. However, this court notes that Bernard was **charged** with **both** sexual abuse and attempted sodomy while the testimony at issue was only of Bernard wanting the children to ride naked or partially clad on or around a car, not about any other attempts to sodomize another child. Nevertheless, the *Bernard* court found the testimony about the car incident so unusual and distinctive as to corroborate the victim's testimony about both charges. *Id.* at 19. In

the case at bar, the events happened only a couple of years before the rape of Salts.

Under the *Bernard* decision, Jones' testimony falls into the signature modus operandi/corroboration exception because the acts were sufficiently similar to the crime charged in place and method, and certainly show a distinct motive of sexual advancement towards the women. At trial, Ms. Jones testified that in 1987 she shared a bedroom with Ms. Salts (victim), and told of an incident where Frey had entered their room around bedtime. Ms. Jones was in her bedclothes, and said that Frey, explaining that he was "checking them for fever," began feeling her stomach and chest underneath her bedclothes. Although Jones' testimony concerns Frey touching her sexually, Frey was not charged with that crime, only of rape. However, in *Bernard*, the testimony of the four boys who claimed to have run naked around Bernard's car is similar because he was charged also with attempted sodomy, something to which no other witness could testify. Yet, following the *Bernard* logic, this information is logically relevant in that it has a legitimate tendency to prove a material fact in the case by corroborating the testimony of Salts as to Frey's sex crime against her (rape).

*Sladek*, even though prior to *Bernard*, makes this point a close call. However, *Sladek* can be distinguished, as it had additional facts which worked to exclude that evidence. Those facts are absent in the case at bar. *Sladek* was also accused of using nitrous oxide to sedate the victim, an added claim to which no other patient could corroborate. Additionally, none of the testifying patients witnessed the acts done to the others. Here, Jones is not testifying to something which happened to her which did not happen to Salts, such as the use of nitrous oxide or actual rape, as in *Sladek*. In the case at bar, Jones not only testified to Frey's touching her (Jones), but also corroborated Salts' testimony when, as a witness, she testified that he also touched Salts in the exact same fashion as he had touched her (Jones), in the same room, and at the same time. These subtle differences, plus the plain error level of review, point this court in the reluctant

direction of allowing the testimony as signature modus operandi/corroboration evidence under *Bernard* rather than excluding it under *Sladek.*

[b] The second category, witness Jones' testimony of Frey's prior sexual misconduct with victim Salts in 1987, falls under a different exception than the one illustrated in *Bernard,* supra. This testimony differs from the one ruled by *Bernard,* in that it concerns **prior witnessed sexual misconduct** between the **defendant and the victim of the case at bar.** This testimony is ruled by *State v. Dudley,* 880 S.W.2d 580 (Mo.App.1994). In *Dudley* the defendant was convicted on sodomy and sexual abuse charges per his misconduct with the daughter of his live-in girlfriend. The defendant claimed that testimony concerning his prior uncharged sexual misconduct with the victim of the current charge was inadmissible under *Bernard*'s signature modus operandi/corroboration exception. The *Dudley* court expressly limited the holding in *Bernard* to uncharged conduct involving persons **other than the victim** at a different and unrelated time and place. *Id.* at 582; citing *State v. Conley,* 873 S.W.2d 233, 235 (Mo. banc 1994). The court stated:

Indeed, the language of *Bernard* indicates it does not apply when the alleged acts of prior sexual misconduct are against the victim in question. Therefore, we find *Bernard* left intact the law regarding admission of prior uncharged sexual misconduct with the **same** victim.

Contrary to Defendant's assertions, the law is not limited to determining whether the acts in question fall within the common scheme or plan exception. Rather, our courts have consistently recognized that prior uncharged acts of sexual misconduct between the defendant and the same victim indicate the defendant's sexual desire for that particular victim and ten to establish the defendant's **motive** for committing the charged crimes, i.e., satisfaction of sexual desire for the victim.

*Id.* at 583; citing *State v. Graham,* 641 S.W.2d 102, 105 (Mo. banc 1982). The court further held that the prior acts of sexual misconduct between the defendant and the victim were admissible to show the defendant's motive for committing the crimes charged. *Id.* at 582. The case at bar today

is closely akin to the situation in *Dudley,* and the same rule should apply. Jones' testimony concerning Frey's prior act of sexual advancement (feeling her under her bedclothes) towards the victim (Salts) clearly shows a motive for the later sex crime.

In sum, I do not see how the acts in *Bernard,* where allowed, can be compared with those here, and can be ruled erroneous and qualify for the granting of a new trial.

If this court grants a new trial, it will lead to the anomaly the trial court erred by not further ruling on the objection, and then *sua sponte* granting a mistrial.

## II.

I take particular exception to the implication the Jones' testimony, as to Frey's attack on her, for error. There was no error, plain or otherwise, in admitting evidence of the defendant's physical attack on a prosecution witness. Jones had no civil case pending against Frey, nor was he charged criminally for any conduct as to Jones. The attack and threats on and to Jones came less than four months before the trial condemning the forcible rape of Salts, and show a consciousness of guilt to the charged crime.

The majority correctly states the applicable rule of law concerning Frey's threats and attack on Jones, his way of warning her not to testify against him. Evidence that an accused threatens a witness is admissible as evidence of his consciousness of guilt. *State v. White,* 870 S.W.2d 869, 875 (Mo.App.1993). However, the majority holds to the contrary to the holding in *White.* Nevertheless, the law is clearly stated in *White* and should rule the case at bar on this issue.

The Supreme Court of Missouri first held "... it has long been recognized that evidence of threats by the defendant against witnesses against him may be adduced in order to establish his guilt on the original charge." *State v. Corlew,* 463 S.W.2d 836 (Mo.1971). In *Corlew,* the defendant was convicted of robbery. Before trial, Corlew threatened and assaulted several people who were to testify against him at the trial. One witness testified that Corlew slapped him and said 'he was going to get him.' Another witness testified that Corlew similarly threatened him and broke his nose. The court not

only held the evidence admissible to prove consciousness of guilt but also said, "[A]lthough we need not discuss the point further ... such evidence could also fall within the identity exception to the rule against showing prior offenses." *Id.* at 840; citing *State v. Reese*, 274 S.W.2d 304, 307 (Mo. banc 1954). In finding the uncharged evidence admissible, the court cited several other Supreme Court decisions. *See; State v. Mason*, 394 S.W.2d 343, 344 (Mo.1965); *State v. Rowe*, 324 Mo. 863, 24 S.W.2d 1032 (Mo.1930).

This court has recently followed *Corlew's* precedent. In 1993, this court held that a criminal defendant charged with second degree murder was not prejudiced when evidence was admitted concerning a threat made by the defendant to the detective working on the case. In *State v. White*, this court allowed Detective DeVulkenaire's testimony that appellant had threatened to "kick his ass," although appellant asserted that the testimony exposed the jury to unrelated, uncharged misconduct, and did nothing to establish guilt of the charged crime (the murder). 870 S.W.2d 869, 875 (Mo.App.1993).

This court disagreed, ruling that evidence of threats by an accused toward a witness against him may be adduced in order to establish his guilt on the original charge; such evidence is admissible as consciousness of guilt. *State v. Chunn*, 701 S.W.2d 578, 585 (Mo.App.1985). Furthermore, "Appellant's threatening remarks (to the detective) are inconsistent with the demeanor of an innocent person who in self-defense accidentally shot someone. The testimony is admissible." *White*, at 875.

As such, all case precedent points to a ruling that the evidence of Frey's threats towards Jones in the alley, warning her not to testify against him, is indeed admissible as consciousness of guilt. The facts were much more attenuated in *White*, where the threat was to "kick" a detective, someone who had nothing to do with the original crime charged. Here, witness Jones had a much stronger connection with the defendant's acts than did a detective in a murder case. Jones was a witness of a prior act of the defendant against the victim, and it was obvious Frey feared her testimony. Just as the defendant's threats to witnesses in *White* and *Corlew* were not consistent with someone who

was innocent; neither are a threat and physical assault of Jones a symbol of innocence. The majority's holding on this point is contrary to Missouri precedent. As such, I would affirm the admission of evidence of the subsequent threat and attack on Jones as showing consciousness of guilt.

\* \* \* \* \* \*

I also take exception to the majority's ruling the Reary–Matlock hearsay dispute as to Ms. Salts having never lied, constitutes error. The majority declines to rule on the prejudicial effect, but notes it was improper bolstering by the last witness to testify. I do not see how this testimony could have any effect on the outcome of this case. Frey did not claim this as error in his motion for new trial, so the appropriate standard of review is plain error, not abuse of discretion. A point on appeal "must be based upon the theory of the objection as made at the trial and as preserved in the motion for new trial." *State v. Ball*, 622 S.W.2d 285, 291 (Mo.App.1981); *State v. Stevenson*, 589 S.W.2d 44, 48 (Mo. App.1979). In addition, a conviction will be reversed for the improper admission of evidence, as here, only where the error is prejudicial, Frey having the burden of proof. *State v. Isa*, 850 S.W.2d 876, 895 (Mo. banc 1993).

I would affirm the judgment of conviction as well as the judgment denying post-conviction relief.