**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Joseph S. SUMOWSKI,
Defendant–Appellant.**

No. 72411.

Supreme Court of Missouri,
En Banc.

July 31, 1990.

Lee Elliott, Troy, for defendant-appellant.

William L. Webster, Atty. Gen., Ronald L. Jurgeson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOLSTEIN, Judge.

Defendant, Joseph S. Sumowski, was convicted by a jury of the felony of child abuse, § 568.060, RSMo 1986. He was sentenced to three years in prison. The case was initially appealed to the Missouri Court of Appeals, Eastern District. This Court granted transfer after opinion. Rule 83.03. Affirmed.

### I.

In August of 1987, B.J. was six years old and living in Mexico, Missouri, with his mother, V. Sumowski, and his stepfather, Joseph Sumowski. The residence where the Sumowskis were staying was owned and occupied by Ms. Etta Fae Reno. During their stay, Ms. Reno noted that B.J. was attempting to play with a telephone. She told defendant about this. Defendant instructed B.J. to leave the telephones alone. On August 18 B.J. was again seen playing with the phone by a son of Ms. Reno. Ms. Reno's son told defendant about the second occasion. Defendant took B.J. to a back bedroom. Ms. Reno said she heard "hitting sounds" coming from the bedroom. She also heard the boy say, "Please, father, don't." Ms. Reno then heard a few more hitting sounds. Later the same day, she saw B.J. again. At that time, he had "big blotches" on his face. On August 20, Ms. Reno telephoned the Missouri Child Abuse Hotline.

Workers from the Division of Family Services and Juvenile Office came to investigate the call. Defendant claimed the bruises on B.J.'s face and neck occurred when he and B.J. were wrestling on the floor and he had B.J. in a locked position between his legs, and B.J. tried to pull away. The two workers took the child to a hospital, where he was examined by a pediatrician. The child told the doctor that the injuries had been received in a fight with neighborhood children. The child would later recite the same story in a juvenile court proceeding.

Appellant was interviewed by Detective Richard Sewell at the Mexico Public Safety Office. After being advised of his *Miranda* rights and signing a waiver of those rights, defendant stated he had slapped B.J. because the child had been playing with the telephone. The Division of Family Services and Juvenile Office workers were present.

At trial, B.J. was called. He testified that his injuries were caused by the defendant and the reason that he had told a different story on earlier occasions was that defendant had told B.J. to say the bruises were inflicted by other children in a fight.

### II.

■ Appellant's first two points on appeal attack the sufficiency of the evidence because (1) B.J.'s testimony was inconsistent with prior testimony and unreliable, and (2) the evidence considered in a light most favorable to the verdict does not establish defendant's guilt. The second point assumes that the Court must disregard B.J.'s testimony. The assumption is in error.

■ In deciding whether the evidence is sufficient to convict a defendant of a particular offense, the appellate court must consider the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the verdict and disregard all evidence and inferences to the contrary. *State v. Mallett*, 732 S.W.2d 527, 530 (Mo. banc 1987), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). The reliability and credibility of a witness is for the jury to decide. Testimony of a single witness may be sufficient to constitute substantial evidence to make a submissible case. *State v. Williams*, 652 S.W.2d 102, 111 (Mo. banc 1983).

B.J.'s testimony at trial was that defendant had "hit me up side the face." The child's testimony was supported by the testimony of Ms. Reno, who was in the house at the time of the abuse. In addition, the defendant made a statement to Detective Sewell in the presence of the Division of Family Services and Juvenile Office employees that he had grabbed and slapped B.J. The admissions of a criminal defendant are direct evidence of his guilt. *State v. Newbold,* 731 S.W.2d 373, 380 (Mo. App.1987). The direct and circumstantial evidence that defendant struck B.J. in the face with sufficient force to cause bruises which would be visible two days later is a sufficient showing that defendant knowingly inflicted "cruel and inhuman punishment on a child less than seventeen years old." § 568.060.1(1), RSMo 1986.

### III.

In his third point on appeal, defendant claims the court erroneously failed to suppress his statement made to Detective Sewell. Defendant has neglected to file a transcript of the hearing on the motion to suppress either in the court of appeals or in this Court. It is an appellant's duty to insure that the record on appeal includes all the evidence and proceedings necessary for determination of the questions presented. *State v. W— F. W—,* 721 S.W.2d 145, 153 (Mo.App.1986); Rule 30.04(c). The state brought the absence of the transcript to defendant's attention in its brief, and defendant has not taken steps to supplement the record. Therefore, our review is limited to the testimony elicited at trial to determine if there was any error in the admission of the out of court statements. *State v. Lorenze,* 592 S.W.2d 523, 527 (Mo.App.1979).

Appellant testified at trial that his statements were made in response to a promise of Detective Sewell and the family services and juvenile workers that if he would say what they wanted him to, he would get counseling and that would be all

there was to it. That differed sharply from the testimony of the detective and the family services worker. Sewell testified that appellant's statements were made after he was read his rights and after defendant signed a *Miranda* waiver. He asserted that no promises were made to defendant. Testimony also indicated that appellant was not under arrest at the time, but he had come to the public safety office on his own. The test for voluntariness of a confession is whether, under the totality of the circumstances, defendant was deprived of a free choice to admit, deny or refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed. *State v. Lytle,* 715 S.W.2d 910, 915 (Mo. banc 1986). Considering the evidence here, the trial court committed no error in finding that the statement was voluntary.

### IV.

Appellant's fourth point on appeal complains that additional talesmen were not summoned in the manner prescribed by § 494.260, RSMo 1986.[1] That section provides:

> If it shall be necessary to fill vacancies in the jury panel for the trial of any one case, the court may in its discretion order the sheriff to summon from the bystanders a sufficient number of qualified persons to fill such vacancies in such case. Bystanders shall be summoned from the various townships in the same proportion as the original panel was selected.

The only record regarding the manner of selection is in conversation between the court and counsel as follows:

> THE COURT: Does either side have an objection to me sending the Sheriff out into the Montgomery City area for the purpose to collect bystanders off the street to come in as hailsmen [sic] in this case?
>
> MR. OSBORNE [counsel for state]: No, Judge.

---

1. Section 494.260 is now repealed. It has been supplanted by § 494.435, RSMo (Cum.Supp. 1989).

THE COURT: Any objection by the Defendant, Ms. Francke?

MS. FRANCKE [counsel for defendant]: Well, I guess not.

THE COURT: Our Sheriff is not involved in this case and I don't know what happened to the three people that were summoned that didn't show up. Probably the fairest way to do it would be just to direct him to go to a couple of the local restaurants and grab whoever is sitting there drinking coffee. Any problems with that, either one of you?

MR. OSBORNE: Well, I wouldn't tell him where to go; just tell him to go get ten suitable jurors.

THE COURT: I would tell him not to select anybody he knows personally. I don't want the Sheriff dragging in friends and relatives.

MS. FRANCKE: That is fine.

Thereafter, an additional seven potential jurors were sworn and voir dire was conducted. All seven were retired males. No objection was made by defendant prior to trial that those jurors were improperly selected or consisted of too narrow a group. The record is silent as to how the sheriff selected the additional veniremen. There is nothing in the record about where the veniremen were located when summoned nor whether they were "from the various townships in the same proportion as the original panel was selected." Four of the seven were submitted to the parties on the list of twenty-four qualified jurors. Of the twenty-four member panel, eleven were women. After the state and defendant made peremptory strikes, three of the seven remained on the jury. The jury consisted of six men and six women.

Appellant claims departures from the statutory procedure of sufficient seriousness to require reversal of his conviction and in addition, claims he was denied his Sixth Amendment guarantee of a jury selected from a cross-section of the community because of the systematic exclusion of persons other than retired males.

■ When there is a proper, timely objection to improper jury selection, the test is whether there has been substantial compliance with the statute. *State v. Gresham,* 637 S.W.2d 20, 25 (Mo. banc 1982). However, there is a strong presumption that the jury tendered at the outset of the trial has been properly selected. One who would challenge a jury panel must do so before trial by pleading and proving fatal departures from the basic procedural requirement. *State v. Bynum,* 680 S.W.2d 156, 160 (Mo. banc 1984). The failure to make a timely and proper objection constitutes a waiver. *State v. Mitchell,* 611 S.W.2d 223, 228 (Mo. banc 1981); *Benson v. State,* 611 S.W.2d 538, 541–42 (Mo.App. 1980). The policy for requiring a contemporaneous objection is to minimize the incentive for sandbagging in hopes of an acquittal and then, after an unfavorable verdict, challenge the selection of the jury which convicted. *State v. Bynum,* 680 S.W.2d at 160.

■ In this particular case, the defendant was fully informed regarding the selection process. If defendant or his counsel believed that the sheriff summoning retired males was the result of a noncompliance with the statute or "systematic exclusion" of others, defendant had a duty to object and support the objection with evidence. A defendant has the burden of showing a *prima facie* violation of the cross-section requirement. *State v. Johnson,* 606 S.W.2d 655, 657 (Mo.1980). In order to establish a *prima facie* case, defendant must show that the underrepresentation of other groups was due to a systematic exclusion in the selection process. *Duren v. Missouri,* 439 U.S. 357, 367, 99 S.Ct. 664, 669, 58 L.Ed.2d 579 (1979). Defendant made no showing that the method or "system" used by the sheriff to summon bystanders excluded other groups. A constitutional claim must be raised at the earliest opportunity and preserved at each step of the judicial process. *State v. Smith,* 781 S.W.2d 761, 770 (Mo. banc 1989), *cert. granted, judgment vacated on unrelated grounds,* —— U.S. ——, 110 S.Ct. 1944, 109 L.Ed.2d 306 (1990); *Benson v. State,* 611 S.W.2d at 541. The defendant must plead and prove a fatal departure from the statutory procedure for jury selection prior to

the trial. *State v. Bynum,* 680 S.W.2d at 160. Defendant does not claim plain error, and none is found. Rule 30.20.

## V.

In his fifth point on appeal, defendant claims the trial court should have declared a mistrial when it learned that Ms. Reno had used a bathroom which was used at the same time by jurors during recess. It was determined by questioning the bailiff who had accompanied Ms. Reno that there was no conversation between her and any member of the jury. No request was made for a mistrial. Because of the absence of any communication between the witness and the jurors, defendant has failed to establish that the contact prejudicially influenced the jurors. The failure to *sua sponte* declare a mistrial was not an abuse of discretion. *See State v. Edmondson,* 461 S.W.2d 713, 724 (Mo. 1971).

## VI.

Defendant's sixth point on appeal claims that the trial court erred in refusing to allow him to "endorse" a witness whose name had not been disclosed during discovery. The witness, a former babysitter for B.J., was disclosed to the state only on the morning of trial. The trial judge was puzzled over whether to allow the defendant to use the witness and grant the state a continuance, or whether to refuse to permit defendant to call the witness and proceed to trial. Defense counsel's response was, "No. I think it is in his best interest to go ahead and I was ready to try it without knowing the name of this person, so I am not interested in a continuance." In the face of a potential continuance, defense counsel did not seek a ruling on the request to call the witness. The trial court never ruled and was never asked to permit the witness to testify. The trial court did not refuse permission to call the witness. The claim is meritless.

A second part of the sixth point argues that the trial court erroneously refused to permit introduction of a partial transcript from a juvenile court hearing.

The conditions under which such testimony is admissible are: 1) that it was before a judicial tribunal; 2) that the witness was sworn and testified; 3) that the accused was present and had an opportunity for cross examination; 4) that the parties and issues were substantially the same in the case on trial; and, 5) the witness is unavailable after due diligence. *State v. Dreiling,* 601 S.W.2d 660, 662 (Mo.App.1980). The parties and issues in the juvenile proceeding were not shown to be the same as in the present case. Therefore, the trial court did not err in refusing that testimony.

The third part of defendant's sixth point on appeal is that the trial court erred in refusing to allow Dr. McKee, a psychologist who counseled defendant after the commission of the offense, to testify. The reason counsel offered the doctor's testimony was to disclose statements made by defendant to the doctor regarding how the child had sustained the injuries. The trial court rejected the testimony as hearsay. *See State v. McIntyre,* 654 S.W.2d 188, 190 (Mo.App.1983). Appellant does not suggest on appeal that the doctor's testimony was other than hearsay, but claims it to be expert testimony on the issue of defendant's mental state at the time of the crime. No testimony in the offer of proof or in counsel's statements relating to the offer of proof indicated that the doctor had formed an expert opinion as to defendant's state of mind at the time he committed the crime. The trial court committed no error in rejecting Dr. McKee's testimony.

## VII.

In his final point, defendant claims the state should not have been allowed to introduce evidence regarding B.J.'s stomach problems. The subject came up twice. The first instance of B.J.'s stomach complaints occurred during the testimony of Ms. Reno. On that occasion the court warned the prosecutor, "Let's try to keep away from that situation if we can." Later, during the testimony of the social worker, defense counsel asked directly about B.J.'s stomach problems. The court, once again, stated, "I want to keep away

from all references to stomach problems." There is nothing pointed to in the record which has the potential to inflame the minds of the jurors against the defendant which is so prejudicial and inflammatory so as to justify action by this Court.

A second aspect of the seventh point asserts that the trial court should not have allowed the pediatrician who examined B.J. on August 20 to give speculative testimony regarding potential harm that might result from a blow of the kind sustained by B.J. The testimony given by the doctor was that the temple of the head was near where this injury had occurred, and the temple area was more vulnerable than other parts of the body because of large arteries and proximity to the brain. That testimony was not objected to as being speculative and appears not to have been speculative. The evidence tended to demonstrate that striking the child in the head with the force apparently used by appellant was cruel and unusual punishment, an element of the offense charged.

The judgment is affirmed.

BLACKMAR, C.J., ROBERTSON, RENDLEN, HIGGINS and COVINGTON, JJ., and PARRISH, Special Judge, concur.

BILLINGS, J., not sitting.