**STATE of Missouri, Respondent,**

v.

**Keenon GILES, Appellant.**

**No. WD 51498.**

Missouri Court of Appeals, Western District.

Submitted Jan. 22, 1997.

Decided May 13, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 1, 1997.

Application to Transfer Denied Aug. 19, 1997.

Kathleen K. Woods, Kansas City, for appellant.

Philip M. Koppe, Asst. Attorney General, Kansas City, for respondent.

Before ULRICH, C.J., P.J., and BERREY and SMART, JJ.

SMART, Judge.

Keenon Giles appeals from the trial court's judgment finding him guilty of two counts of robbery in the first degree, in violation of § 569.020, RSMo 1994,[1] and two counts of armed criminal action, in violation of § 571.015. Giles was sentenced to concurrent terms of fifteen years on each robbery conviction to be served consecutively to concurrent terms of three years on each armed criminal action conviction, for a total of eighteen years imprisonment. On appeal, Giles challenges the sufficiency of the evidence to support the convictions.

Judgment is affirmed.

The evidence is viewed in the light most favorable to the verdict. The evidence at defendant's trial involved a store located in Grandview, Missouri, known as the Liquor Locker. On May 19, 1994, while Bobby Winsett was working the night shift, a man entered the store wearing a ski mask and waving a tool that seemed at the time to be a sharp-pointed hammer or small pickaxe in the air. He began using profanity and yelling for Winsett to give him "all the money." The robber ordered Winsett to get on the floor. The robber then grabbed the money from the cash register and fled from the store. The robber left the ski mask lying on the sidewalk.

The next morning, on May 20, a man wearing a ski mask and carrying a claw hammer entered the store and approached the cash register. Again, the man was using profane

---

1. All statutory references are to Revised Statutes of Missouri 1994, unless otherwise indicated.

language and demanding all the money. The man ordered Winsett to the floor, took the money from the register and fled. Winsett said he was sure that the robber was the same man who had robbed him the night before. He said he knew it was the same man because of the voice, the mannerisms, the way the robbery was done, and "everything." He said the tool the man held was probably the same tool as the man held the previous night, but this time he got a better look at it. Winsett was unable to identify the defendant as the robber because the robber's face was covered during both robberies.

Eleven days later, on May 31, 1994, at around 2:00 p.m., Ronald Radford was working at the Liquor Locker. Another robbery occurred. Because Radford was deceased at the time of trial, the record provides very little information as to the details. Grandview Police Officer Larry Godfrey responded to the scene. He noticed that the cash register was empty and standing open. He also noted that a ski mask was lying on the sidewalk outside the store.

On that same evening, a robbery occurred at a nearby liquor store known as Sportsman Liquors. Robert Williamson, the owner of the store, was working at the store at around 8:30 p.m. when a man entered the store wearing blue jogging pants and a white ball cap with a blue bill. Williamson immediately recognized the man as a customer he had seen several times before in the store. The man, who Williamson later identified as defendant, was armed with a hammer. Defendant hit Williamson, knocking him to the ground. Defendant asked Williamson if the store had a camera. He then asked where the cigarettes were located. Williamson told defendant they were in the glass counter in front of defendant. Defendant used the hammer to smash the glass counter. After defendant left the store, Willliamson noticed that cigarettes were missing and the cash register was empty. Several days later, Williamson identified defendant, without hesitation, from a series of photographs. He stated at trial that he had no doubt that defendant was the man who had robbed the liquor store. He stated he was 100 percent sure of the identification.

After the robbery at Sportsman Liquors, investigators from the Missouri Highway Patrol and Grandview Police Department set up a surveillance operation at both liquor stores. They installed cameras which were designed to trigger and begin taking pictures when a "bait bill" was removed from the cash register. They also installed "panic button" alarms in both the stores, which were designed to notify the police directly if the panic button was pushed.

Police positioned themselves so they were able to watch both stores from one location. On June 1, 1994, Gary Sanson, a state patrolman, was watching the stores through binoculars. He noticed a car make a U-turn and park on the north side of the liquor store. Trooper Sanson observed a man wearing black pants and a white ball cap with a blue bill get out of the vehicle and walk to the rear of the car. The man took his cap off. He then pulled out a black scarf, put it over his head and put his cap back on. He appeared to be in a rush. Before leaving the vehicle, he put a hammer in his pants. Seconds after the man entered the Liquor Locker, the alarm was activated. The man then came running out of the liquor store, got into his car and sped away. Several patrol cars pursued him. Defendant drove by Sergeant Don Angel, a Grandview officer, who was able to identify defendant as the driver of the car. Thomas Collins, another officer involved in the pursuit, testified he was also able to identify defendant as the car's driver. Defendant eventually was able to escape from the pursuing officers.

The police determined that the car they had pursued was registered to defendant. After Williamson identified defendant from the photographs, a "stop order" was issued for defendant's arrest. The next day, defendant was arrested in his vehicle. During the stop, police observed through defendant's window what appeared to be the clothing defendant had worn in the June 1st robbery and a black piece of material which resembled a mask. They also noticed a hammer sticking out from under the front seat of the car. Defendant was charged with all five of the robberies. After the close of the evidence, the jury found defendant guilty on

two of five counts of robbery in the first degree (the May 31 robbery of Sportsmen's Liquors and June 1 robbery of Liquor Locker) and two of five counts of armed criminal action. Defendant now appeals.

■ Defendant raises two points challenging the sufficiency of the evidence to support his convictions. Defendant first claims that the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence to sustain guilty verdicts as to Counts VII and VIII, which were the counts related to the robbery of Sportsman Liquors ·on the evening of May 31, 1994.

In reviewing a challenge to the sufficiency of the evidence, an appellate court accepts as true all evidence favorable to the state, including reasonable inferences to be drawn from the evidence. *State v. Silvey,* 894 S.W.2d 662, 673 (Mo. banc 1995). This court limits its review to a determination of whether there is substantial evidence from which a reasonable jury might have found defendant guilty beyond a reasonable doubt. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). This court does not weigh the evidence, *State v. Villa–Perez,* 835 S.W.2d 897, 900 (Mo. banc 1992); nor does it determine the credibility of witnesses, *State v. Sumowski,* 794 S.W.2d 643, 645 (Mo. banc 1990). The jury determines the reliability, credibility and weight of a witness's testimony, *Id.*

The evidence presented to support Counts VII and VIII showed that Williamson identified defendant as the man who had robbed the liquor store on the evening of May 31, 1994, from an array of photos, and also at trial. Upon seeing defendant enter the store, Williamson immediately recognized defendant as someone who had been a customer of the store over the years. Defendant claims that Williamson's testimony should not have been believed because Williamson did not have adequate time or a sufficient opportunity to view the robber's face and because his testimony at trial was inconsistent with what he had reported to police after the robbery.

Although Williamson stated he may have seen defendant's face for only twenty to thirty seconds, Williamson testified that he was absolutely sure that defendant was the robber. He stated at. trial that he had no doubt that defendant was the man who had robbed the liquor store. The contradiction defendant points to is an alleged contradiction between Williamson's testimony and Officer Rick Poynter's testimony. Officer Poynter testified that Williamson told him at the time of the investigation that two males entered the store together. Poynter said Williamson told him that Williamson could not describe the second man because he was pushed to the floor. Williamson testified at trial that at first he thought two men had entered the store together, but that he realized shortly thereafter that defendant was alone. When asked about the statement made to the officer, Williamson said that he told the officer that he thought he "caught a glimpse" of someone else "out of the corner of his eye," but that he was focused on defendant. Williamson's testimony was not self-contradictory. The jury determines the reliability, credibility and weight of a witness's testimony, *Sumowski,* 794 S.W.2d at 645, and it is free to believe all, part or none of any witness's testimony, *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). It was the jury's responsibility to determine the credibility of Williamson's testimony and it was responsible for resolving any contradictions or conflicts. in his testimony. *Id.* The testimony of a single witness is generally sufficient to constitute substantial evidence and to make a submissible case. *Sumowski,* 794 ̄ S.W.2d at 645. The evidence was sufficient to support the convictions for Counts VII and VIII and, thus, the trial court did not err. Point II is denied.

■ Defendant also claims that the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence to sustain guilty verdicts as to Counts IX (robbery in the first degree) and X (armed criminal action) as to the robbery on June 1, 1994. Ronald Radford, the store clerk in the June 1 robbery, was deceased at the time of trial. Defendant contends that the state failed to prove beyond a reasonable

doubt that defendant had forcibly stolen anything during the incident.

Section 569.020.1 provides:

A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,

(1) Causes serious physical injury to any person; or

(2) Is armed with a deadly weapon; or

(3) Uses or threatens the immediate use of a dangerous instrument against any person; or

(4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

The state claims that although there was no direct evidence that defendant forcibly stole money from the store, there was ample circumstantial proof of the essential elements of the crime charged. We agree.

The state offered evidence that in the incident at the Liquor Locker on June 1, 1994, the surveillance cameras were triggered, and began taking pictures, when a "bait bill" was removed from the cash register. The series of several pictures, taken from a camera above and to the side of the cash register, did not show any one other than Radford near the cash register, but showed that the levers (designed to hold the cash in place) were up, and it appears that the cash slots in the drawer are empty. There was no "bait bill" attached to either lever in the pictures.

In that incident, Officer Samson observed defendant's actions outside the store. Those actions were entirely consistent with a robbery of the store. Also, the defendant was positively identified by officers as he sped away in a vehicle, and the car was found to be registered to the defendant.

■ The only thing questionable is whether the state proved, without Radford to testify, and without any photograph showing defendant removing money from the register, that any money or property was taken. The state argues that the picture depicting the cash drawer open, with the two levers in the upright position, constituted sufficient evidence to allow the jury to reasonably infer that defendant had used the hammer as a threat, and had stolen at least some money (if nothing else, the bait bill) from the cash register. In light of the previous similar robberies and the fact that defendant had entered the store with a hammer on his person and a scarf covering his head, the state contends that the only reasonable inference was that the defendant had dashed into the store with the intent to commit the robbery, and that his actions caused the cameras to activate when he removed the "bait bill" from the cash register. The state suggests that defendant must have moved away from the register quickly enough that the camera did not catch him at the register. The state suggests that even if there had been nothing in the cash drawer other than the "bait bill," the removal of that bill, with the intent to keep it, while threatening Radford with the hammer, would be sufficient to constitute the crime of robbery in the first degree. We find this reasoning persuasive. We know of no reasonable explanation for the circumstantial evidence other than that of defendant's guilt, and defendant fails to suggest any reasonable alternative interpretation of the facts. Someone removed some cash from the drawer. The evidence points sufficiently to the suggestion that it was Giles. In a circumstantial evidence case, the facts and circumstance to establish guilt are reviewed in the same way as a direct evidence case: there must be sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Grim,* 854 S.W.2d at 406. It is no longer necessary for the state to show that the evidence is inconsistent with any reasonable theory of innocence. *Id.* at 407. Of course, the concept of determining whether there is any reasonable theory consistent with innocence can be a useful tool in deciding whether the evidence was sufficient to persuade a reasonable juror of defendant's guilt beyond a reasonable doubt. Under the circumstances, and in view of the evidence of Giles' activities in the other robberies, there was sufficient evidence from which a reasonable jury could find defendant guilty beyond a reasonable doubt. We conclude that the evi-

dence was sufficient to support the conviction.

Affirmed.

ULRICH and BERREY, JJ., concur.