

# In the Missouri Court of Appeals
## Eastern District

DIVISION FIVE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101043 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | |
| | ) | |
| ANDREW JOHNSON, | ) | Honorable John J. Riley |
| | ) | |
| Defendant/Appellant. | ) | Filed: March 10, 2015 |

## Introduction

Andrew Johnson (Appellant) appeals from the trial court's judgment convicting him of first-degree assault, armed criminal action, and unlawful use of a weapon. We affirm Appellant's conviction and sentence, but remand for correction of judgment *nunc pro tunc*.

## Factual and Procedural Background

On July 27, 2011, Appellant was charged with first-degree assault (Count I), armed criminal action related to the first-degree assault charge (Count II), unlawful use of a weapon (Count III), and leaving the scene of a shooting (Count IV). The evidence in the light most favorable to the verdict is as follows.

On June 15, 2011, Guy Atchison (Atchison), a driver for Countrywide Asset and Auto Recovery (Countrywide), was assigned to repossess a car belonging to Appellant's daughter, Susie Lothridge (Lothridge). Atchison drove his tow truck to Lothridge's home

and located the car in the gated parking lot of the building in which Lothridge resided. Atchison was not permitted to enter gated parking lots to repossess vehicles. As Atchison was filing a report indicating that another attempt to retrieve the car should be made later, he saw Lothridge get into the car and drive out of the parking lot. The street was barricaded at one end, leaving only one way for ingress and egress.

Atchison pulled his truck into the street, blocking Lothridge's path. Atchison exited his truck, approached Lothridge's vehicle and told her that he had an order to repossess her vehicle. Lothridge responded, "Well, you're not repossessing my vehicle today." Atchison told Lothridge he was going to call the police. Atchison returned to his truck and called both his supervisor and the police. Lothridge drove back into the parking lot. Atchison backed his truck out of the street and waited for the police to arrive.

Lothridge, a police officer, called her father, Appellant, telling him that a man was blocking her in and preventing her from going to work. Appellant arrived in his vehicle approximately five minutes later, pulled into the parking lot, and instructed Lothridge to follow him out of the lot. Lothridge did not tell Appellant that Atchison was attempting to repossess her vehicle and explained at trial that she called Appellant instead of the police because "I knew that my dad was the type of dad that would come down and settle any monetary thing that I had going on with this…car."

When Appellant drove out of the parking lot followed by Lothridge, Atchison pulled his truck into the street, blocking both cars from leaving. Lothridge and Appellant exited their vehicles and Appellant approached the tow truck. As Atchison started to roll down his window to talk to Appellant, Appellant grabbed the tow truck's door handle and

2

tried to open the door. The truck was locked and Appellant's hand slipped off. Appellant lifted his shirt, revealing the handle of a gun tucked into his waistband. Atchison put the truck into drive and, as he pushed on the accelerator, he heard a gunshot and felt a burning sensation in his back. Atchison heard more shots as he drove off. Atchison hit a curb and went airborne before hitting a pillar and a parked car and colliding with an ambulance.

Atchison and the ambulance driver both jumped out of their vehicles. Once Atchison explained to the driver that he had been shot, the paramedics placed him in the ambulance and took him to the hospital. Atchison had surgery to extract the bullet and later underwent physical therapy. At the time of trial, Atchison continued to have physical issues from a muscle torn as a result of the shooting.

Appellant returned home after the shooting. When police arrived at the scene, Lothridge gave them Appellant's address. Officers were dispatched to Appellant's apartment, where they recovered a loaded revolver and three shell casings from the kitchen trash. Appellant told police he fired at Atchison because Atchison had pointed a black semi-automatic handgun up in the air. Police searched the ambulance, the scene, and the tow truck, but never located a weapon. No gun was recovered from Atchison by the hospital staff.

The tow truck had three gunshot holes in the driver's side window and door area. The driver's side window was shattered and one bullet went through the metal and into the cab of the truck.

At trial, Appellant testified when he approached Atchison in the tow truck, Atchison's window was down and Atchison was pointing a gun at Appellant. Appellant

3

testified he was afraid and felt he was in danger so he pulled his weapon and shot at Atchison three times while running toward the back of the truck.

The jury found Appellant guilty of first-degree assault (Count I); armed criminal action (Count II); and unlawful use of a weapon for carrying a concealed firearm (Count III), and acquitted Appellant on the charge of leaving the scene of a shooting (Count IV).

On January 31, 2014, the trial court orally pronounced its order, judgment, and sentence, imposing ten years' imprisonment, suspended execution of sentence with five years' probation, for the first-degree assault conviction; three years' imprisonment on the armed criminal action conviction; and suspended imposition of sentence with five years' probation on the unlawful use of a weapon conviction. On the same day, the court entered a written judgment accurately reflecting its oral pronouncement of sentence on the armed criminal action and unlawful use of a weapon convictions but inaccurately indicating Appellant's sentence on the first-degree assault conviction was three years' imprisonment, suspended execution of sentence with five years' probation. This appeal follows.

## Points Relied On

In his first point, Appellant argues the jury's verdict was against the weight of the evidence, in that the evidence presented showed Atchison was the initial aggressor and Appellant was acting in self-defense.

In his second point, Appellant argues the trial court erred in not allowing Exhibit A, a complete copy of Countrywide's Field Agent's Guide (Field Guide), to be published to the jury and instead requiring a redacted version be submitted.

In his third point, Appellant contends the trial court erred in denying Appellant's request to present evidence as to Missouri Revised Statutes Sections 574.010[1] and 565.130, governing peace disturbance and unlawful imprisonment, respectively, in that the defense should have been permitted to present evidence that Atchison might have violated the law while attempting to repossess Lothridge's vehicle and was the initial aggressor in the encounter.

Discussion

Point I

In his first point relied on, Appellant argues the verdicts were against the weight of the evidence because the evidence demonstrated Atchison was the initial aggressor and Appellant was acting in self-defense. The argument portion of Appellant's brief does not address self-defense but instead argues the evidence presented was insufficient to establish the elements of the crimes.

As a preliminary matter, we note that Appellant's Point I does not comply with Rule 84.04.[2] Rule 84.04 sets forth the mandatory rules for appellate briefing. Duncan-Anderson v. Duncan, 321 S.W.3d 498, 499 (Mo. App. E.D. 2010). A party's failure to substantially comply with Rule 84.04 preserves nothing for review and is grounds for dismissing an appeal. Lueker v. Mo. W. State Univ., 241 S.W.3d 865, 867 (Mo. App. W.D. 2008). An appellant is required to develop the issue raised in its point relied on in the argument portion of the brief. Carlisle v. Rainbow Connection, Inc., 300 S.W.3d 583, 585 (Mo. App. E.D. 2009). Undeveloped issues are not preserved for appeal. State v. Dvorak, 295 S.W.3d 493, 500 n. 3 (Mo. App. E.D. 2009). Furthermore, Rule 84.04(e)

---

[1] All statutory references are to RSMo 2006.
[2] All rule references are to Mo. R. Crim. P. 2014.

5

provides that "[t]he argument shall be limited to those errors included in the 'Points Relied On.'" Issues that appear only in the argument section of the brief and are not included in the Point Relied On are not properly presented for appellate review. State v. Thompson, 341 S.W.3d 723, 728 n. 1 (Mo. App. E.D. 2011). Although a deficient brief preserves nothing for review, we prefer to decide criminal cases on the merits and, therefore, will exercise our discretion and review Appellant's claim that the State failed to present sufficient evidence to support his convictions as raised in the argument portion of his brief.[3]

On review of a challenge to the sufficiency of the evidence, this Court is limited to determining whether the evidence was sufficient for a reasonable person to find Appellant guilty beyond a reasonable doubt. State v. Rousan, 961 S.W.2d 831, 841 (Mo. banc 1998). We view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the verdict. Id. It is the jury's duty to assess the reliability, credibility, and weight of the witness's testimony. State v. Giles, 949 S.W.2d 163, 166 (Mo. App. W.D. 1997).

A person commits first-degree assault when he "attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Section 565.050. "Serious physical injury" is defined as a "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body[.]" Section 565.002(6).

---

[3] Appellant challenges the sufficiency of the evidence for each of his convictions, including his conviction for unlawful use of a weapon in Count III for which he received a suspended imposition of sentence. A conviction resulting in a suspended imposition of sentence, however, is not a final appealable judgment so this Court will not review Appellant's conviction on Count III. State v. Bone, 447 S.W.3d 757 (Mo. App. E.D. 2014).

On appeal, Appellant argues the evidence was insufficient to support his convictions for first-degree assault and the related charge of armed criminal action because the State failed to prove beyond a reasonable doubt that Appellant did not "merely" fire his gun but that he fired his gun for the purpose of attempting to kill or cause serious physical injury.

"'Direct proof of a required mental state is seldom available and such intent is usually inferred from circumstantial evidence.'" State v. Beam, 334 S.W.3d 699, 707 (Mo. App. E.D. 2011), quoting State v. Holleran, 197 S.W.3d 603, 611 (Mo. App. E.D. 2006). "A defendant's mental state may be determined from evidence of the defendant's 'conduct before the act, from the act itself, and from the defendant's subsequent conduct.'" Id.

The evidence at trial viewed in the light most favorable to the jury's verdict was that as Appellant approached the tow truck, Atchison started to roll his window down in order to speak with Appellant. Once Appellant reached the tow truck, he immediately tried to open the door of the truck. Finding it locked, Appellant lifted his shirt, revealing the butt of a handgun tucked into his waistband. Upon seeing the handgun, Atchison attempted to flee by putting the truck into gear and hitting the accelerator. As he began driving away, Appellant fired three shots into the truck's driver's side door and window, shattering the window and striking Atchison in the back.

Appellant's actions throughout his encounter with Atchison, including firing multiple shots at Atchison while he fled, create a reasonable inference that Appellant intentionally fired a lethal weapon at Atchison for the purpose of attempting to kill or cause serious physical injury to Atchison. The State produced sufficient evidence from

7

which a reasonable trier of fact could find Appellant guilty beyond a reasonable doubt of first-degree assault and the related charge of armed criminal action. Based on the foregoing, Appellant's Point I is denied.

Points II and III

Next, Appellant raises two arguments regarding the presentation of evidence and argument that Atchison's conduct of blocking Lothridge's and Appellant's vehicles amounted to criminal conduct and that such information was relevant to show that Atchison was the initial aggressor in the encounter and supported Appellant's self-defense theory.

> Use of deadly force in self-defense requires the following:
>
> (1) an absence of aggression or provocation on the part of the defender, (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life.

State v. Crawford, 904 S.W.2d 402, 405-06 (Mo. App. E.D. 1995).

To be admissible, evidence must be logically and legally relevant. State v. Dennis, 315 S.W.3d 767, 768 (Mo. App. E.D. 2010). Evidence is logically relevant if it tends to make the existence of a material fact more or less probable, and legally relevant if its probative value outweighs its prejudicial effect. Id.

"Determination of the relevancy and admissibility of evidence is a matter clearly within the discretion of the trial court and will not be reversed in the absence of an abuse of that discretion." State v. Kidd, 990 S.W.2d 990 S.W.2d 175, 178 (Mo. App. W.D. 1999). The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable that it indicates a lack of careful consideration.

State v. Forrest, 183 S.W.3d 218, 223 (Mo. banc 2006).  We review the trial court "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial."  Id. at 223-24.  Trial court error is not prejudicial unless there is a reasonable probability that the error affected the outcome of the trial.  Id. at 224.

### Point II - Exhibit A1

During a pre-trial conference, the court discussed with counsel Appellant's request to present evidence of the Field Guide, a manual given to Countrywide's employees, which included a provision directing the company's drivers to halt repossession efforts if a debtor objects to repossession of the vehicle and a breach of peace occurs.  The court ruled Appellant could present evidence and argument that Atchison did not follow his company's rules and his actions constituted a breach of peace.  The court also ruled Appellant could not tell the jury what legally constitutes a breach of peace or present as evidence a legal definition of a breach of peace as contained in the Field Guide.

During trial, Appellant cross-examined Atchison with a copy of the Field Guide and the guide was admitted into evidence over the State's objection as Exhibit A.

Prior to Appellant's case-in-chief, the court and counsel discussed Appellant's use of portions of the Field Guide in questioning Patrick Linsenbardt (Linsenbardt), the Operations Partner at Countrywide.  The court agreed Appellant could question Linsenbardt about most of the Field Guide's provisions but ruled Appellant could not ask about the definition of a breach of peace that referenced the criminal law and could not ask about a provision that referenced lawsuits and insurance.  Defense counsel did not

9

object to the court's ruling, instead indicating he would comply. The court asked counsel whether the Field Guide needed to be redacted in the event the jury asked to see the exhibits during deliberations. Defense counsel indicated he planned to have a PowerPoint presentation prepared isolating the authorized provisions and the court suggested that a hard copy of the PowerPoint be made and marked as Exhibit A1.

During his examination of Linsenbardt, Appellant questioned him about the Field Guide and whether Atchison complied with the guide while trying to repossess Lothridge's car. Linsenbardt was also permitted to read some examples from the Field Guide of actions that would constitute a breach of peace.

At the close of the evidence, the State objected to some of the contents of Exhibit A1. The court sustained some of those objections and defense counsel indicated, without objection, that he would make the additional redactions. The court asked whether Exhibit A1 could be admitted with the understanding that if the jury requested to see exhibits, it would receive Exhibit A1 and not Exhibit A. Both the prosecutor and defense counsel indicated their agreement with that procedure. During deliberations, the jury requested "the handbook for the repo agency" and the court submitted Exhibit A1 without objection from Appellant. Appellant's motion for new trial contained a claim that the trial court erred in admitting Exhibit A into evidence but not allowing the exhibit to be shown to the jury.

On appeal, Appellant asserts the trial court erred in not allowing the complete Field Guide to be published to the jury and requiring Appellant to create Exhibit A1, a version redacting a legal definition of a breach of peace for presentation to the jury.

At trial, Appellant not only failed to object to the creation of the exhibit, its admission into evidence, or its submission to the jury but also repeatedly acquiesced to these actions. After the jury requested the Field Guide, the court asked counsel whether submitting Exhibit A1 to the jury was acceptable and defense counsel answered "Yes." Appellant's agreement to the submission of Exhibit A1 to the jury amounts to an affirmative waiver of appellate review of the issue. See State v. Williams, 118 S.W.3d 308, 313 (Mo. App. S.D. 2003) ("As distinguished from a simple failure to object, an announcement by the defense of 'no objection' amounts to an affirmative waiver of appellate review of the issue.").

Although Appellant waived this error for appellate review by failing to raise a specific objection to the submission of the exhibit, this Court can still review unpreserved claims of plain error. Rule 30.20; State v. Wurtzberger, 40 S.W.3d 893, 897-98 (Mo. banc 2001). Under the plain error standard, we will reverse when a plain error affecting a substantial right results in manifest injustice or a miscarriage of justice. Rule 30.20; State v. Johnson, 220 S.W.3d 377, 385 (Mo. App. E.D. 2007). It is a defendant's burden to demonstrate that the error prejudiced him and will result in a manifest injustice or a miscarriage of justice. Johnson, 220 S.W.3d at 385. Appellant has failed to demonstrate that the redacted portions of the Field Guide were relevant or that submitting the redacted guide in place of the complete guide affected the outcome of the trial.

The criminal definition of a breach of peace in the Field Guide was not logically relevant to Appellant's self-defense theory. Whether Atchison's conduct during the repossession could have fit a criminal definition of a breach of peace in no way tends to establish that Atchison was the initial aggressor in the encounter or whether Appellant

11

reasonably believed there was a real or apparently real necessity to kill in order to save himself from an immediate danger of serious bodily injury or death. Crawford, 904 S.W.2d at 405-06. See also State v. Beck, 167 S.W.3d 767, 787, 789 n.5 (Mo. App. W.D. 2005), overruled on other grounds by State v. Bolden, 371 S.W.3d 802, 805-06 (Mo. banc 2012) (under the self-defense statute, a reasonable belief by defendant of use or imminent use of unlawful force by the victim does not require proof that the victim's acts of force were actually unlawful and the lawfulness of the victim's act should not be confused with the purpose of the self-defense instruction, which is to determine the lawfulness of the defendant's acts in response thereto).

Under a self-defense theory, the relevant inquiry is whether Appellant reasonably believed, based upon Atchison's actions, that there was a real or apparently real necessity for him to kill Atchison in order save himself from immediate danger of serious bodily injury or death. This question is answered by looking to Atchison's conduct, not to whether such conduct might be able to support a criminal conviction.

The trial court allowed Appellant to present evidence of Atchison's conduct and Appellant's response to the conduct to establish that Atchison was the initial aggressor. The court placed no substantive restrictions on Appellant's ability to present evidence describing the events that transpired before, during, or after the attempted repossession and shooting. The court also allowed Appellant to question Atchison and Linsenbardt about the Field Guide's provisions regarding Countrywide's repossession procedures, including the provisions against continuing repossession efforts in the event of a breach of peace and examples from the guide as to what actions constitute a breach of peace.

At trial, Appellant's self-defense theory was predicated upon his testimony that when he approached Atchison's tow truck, Atchison was pointing a gun at him and Appellant drew his weapon and fired at Atchison because he was afraid for his and Lothridge's safety. Under the facts of this case, Appellant could only sustain his use of deadly force against Atchison by convincing the jury that Atchison used or displayed a handgun against him. The mere act of blocking someone's car by itself, whether criminal or not, would not justify a response of deadly force. The jury verdicts demonstrate that in the face of conflicting testimony regarding whether Atchison was armed with a gun and pointed said gun at Appellant, the jury found Appellant's testimony less credible or convincing than the contradictory evidence.

The trial court did not err in submitting to the jury an exhibit redacting the criminal definition of a breach of peace from the Field Guide because the proposed evidence was not logically relevant to Appellant's self-defense theory. Further, there is not a reasonable probability that the exclusion of the guide's definition of a breach of peace affected the outcome of the trial. Based on the foregoing, Appellant's Point II is denied.

### Point III - Missouri Criminal Statutes Governing
### Peace Disturbance and Unlawful Imprisonment

In his third point, Appellant contends the trial court erred in refusing to allow Appellant to read from the Missouri Revised Statutes governing criminal peace disturbance and unlawful imprisonment in order to demonstrate that Atchison might have violated the law while attempting to repossess Lothridge's vehicle because this evidence was relevant to the issue of whether Atchison was the initial aggressor and supported Appellant's self-defense theory.

13

Appellant has failed to demonstrate that the criminal statutes were logically relevant or that their exclusion affected the outcome of the trial. As already discussed in Appellant's Point II, whether or not Atchison's conduct during the repossession could have amounted to criminal conduct in no way tends to establish that Atchison was the initial aggressor in the encounter or whether Appellant reasonably believed there was a real or apparently real necessity to kill in order to save himself from an immediate danger of serious bodily injury or death. Crawford, 904 S.W.2d at 405-06. See also Beck, 167 S.W.3d at 787, 789 n.5.

Furthermore, as a general rule, instructing the jury as to the law is a prerogative of the court which may not be usurped by counsel. See Nicholls v. Kammerich, 626 S.W.2d 653, 659 (Mo. App. W.D. 1981) (counsel may not instruct the jury as to a rule of law in closing argument; such declarations must be made by the judge), and State v. Brightman, 388 S.W.3d 192, 201 (Mo. App. W.D. 2012) (application of rule during closing argument). Thus, it would be improper for Appellant to have instructed the jury as to the law, especially irrelevant law directed solely at the victim's allegedly uncharged criminal conduct.

The trial court did not err in refusing to allow Appellant to present evidence of the Missouri Revised Statutes governing peace disturbance and unlawful imprisonment because the evidence was irrelevant and would not have aided Appellant's self-defense theory. In addition, Appellant was able to present evidence of Atchison's conduct and Appellant's response to that conduct to support his theory of self-defense, and there is not a reasonable probability that the exclusion of this evidence affected the outcome of the trial. Based on the foregoing, Appellant's Point III is denied.

Conforming Written Judgment to Oral Pronouncement

The trial court's written judgment and sentence on Count I providing for a 3-year prison term, suspended execution of sentence, does not conform to the court's oral pronouncement of a 10-year prison term, suspended execution of sentence. On appeal, the State requested this Court to remand the cause to the trial court for correction of the judgment *nunc pro tunc*. Appellant concedes the error and acquiesced to the entry of a *nunc pro tunc* order correcting the mistake. When there is a material difference between a court's oral pronouncement of sentence and the written judgment, the oral pronouncement of sentence controls. McArthur v. State, 428 S.W.3d 774, 781 (Mo. App. E.D. 2014). The failure to accurately memorialize the decision of the trial court as announced in open court is a clerical mistake, which may be corrected by a *nunc pro tunc* order. Id. at 782. Accordingly, we order the trial court to correct the written judgment so that it conforms with the court's oral pronouncement of sentence as to Appellant's conviction on Count I.

Conclusion

The judgment of conviction and sentence is affirmed. The cause is remanded for correction of the judgment *nunc pro tunc* to conform to the trial court's oral pronouncement of sentence.

Sherri B. Sullivan, J.

Angela T. Quigless, C.J., and
Mary K. Hoff, J., concur.

15