

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110820 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| v. | ) | Cause No. 1911-CR00080-01 |
| | ) | |
| MONICA C. SHOEMAKER, | ) | Honorable Deborah J. Alessi |
| | ) | |
| Appellant. | ) | Filed: September 5, 2023 |

## Introduction

Following a bench trial, the trial court convicted Defendant Monica Shoemaker of two counts of abuse or neglect of a child (Counts I and II), one count of endangering the welfare of a child in the first degree (Count IV), and two counts of violating compulsory school attendance for a child (Counts V and VI). On appeal, Defendant challenges the trial court's denial of her motion for judgment of acquittal on Count IV. Defendant also claims the trial court erred in overruling her objection to the State's closing argument. We affirm the judgment of the trial court.

## Factual and Procedural Background

On May 24, 2019, a grand jury indicted Defendant on two counts of abuse or neglect of a child (Counts I and II); two counts of endangering the welfare of a child in the first degree (Counts

III and IV); and two counts of violating compulsory school attendance for a child (Counts V and VI).

On May 24-26, 2022, the trial court held a bench trial. At the conclusion of the State's evidence, and again at the conclusion of all the evidence, Defendant moved for judgment of acquittal on all counts, arguing the State failed to prove her guilt beyond a reasonable doubt. The trial court denied the motions. The court acquitted Defendant on Count III and convicted her on all other counts. The court sentenced Defendant to concurrent sentences of three years in prison on Counts I, II, and IV. On Counts V and VI, the court suspended imposition of sentence and placed Defendant on probation for two years.

*Point I: Sufficiency of the Evidence on Count IV, Endangering the Welfare of a Child*

Viewed in the light most favorable to the verdict, *see State v. Bracy*, 670 S.W.3d 159, 166 (Mo. App. E.D. 2023), the evidence adduced at trial regarding Count IV is as follows.

In August 2018, Defendant, Victim, and Victim's siblings moved to Wentzville, Missouri.[1] Before the move, Victim began to have suicidal ideations and developed a detailed plan to commit suicide. After the move, Victim shared her suicidal thoughts with Defendant. Victim felt like Defendant did not take her seriously. Defendant did nothing and told Victim they would try to work it out at home. Nothing happened, and Victim did not feel any better. Victim then shared her suicidal feelings with her siblings. Her brother, concerned for Victim's welfare, confronted Defendant. Victim's brother told Defendant this was serious and Defendant needed to do something.

Shortly after Victim told Defendant about her suicidal thoughts, a woman from a local church visited their home as part of a charity service. The woman interviewed the family, asked

---

[1] The personal identifying information of Victim and witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

about mental health history, and learned of Victim's suicidal thoughts. Defendant explained she did not want to do anything, did not want any medical intervention, and "just wanted to work on it biblically at home." The woman expressed concern, saw it as an emergency situation, and contacted the Department of Family Services ("DFS").

DFS visited the home a few days later. DFS told Defendant that Victim needed a psychological evaluation and demanded that Defendant take her to the hospital within 24 hours. Defendant initially resisted because she "didn't feel it was absolutely necessary at that point," but ultimately took Victim to the hospital.

At the hospital, Victim participated in group therapy and enjoyed her time there with kids her age. Hospital staff wanted to place Victim on medication, but Defendant refused. When Victim was discharged from the hospital, she asked to stay longer and did not want to go home.

After being discharged, Victim returned home and did not have any more doctor visits or counseling. Victim again felt conflicted and suicidal. She shared her feelings with only her sister because she "didn't think anything was going to get done." Victim returned to the hospital three or four times for her suicidal thoughts. By the time of trial, Victim was doing much better, taking medication, and planning to re-enroll in therapy.

*Point II: Closing Argument*

Defendant testified in her own defense that the Bible is her "moral compass" and shaped how she disciplined and parented her children. Defendant also testified that she preferred whole foods and natural remedies, as opposed to processed foods and medication, for her and her children. On cross-examination, Defendant conceded that she had five children with different fathers, none of whom support the children. She also admitted that she regularly participated in medical research studies, in which she was paid to take experimental medications.

In closing argument, the prosecutor argued:

3

Your Honor, you've heard many, many witnesses throughout this trial. All of them had very similar testimony, except for Ms. Shoemaker. She had an explanation for everything. She had an excuse for everything. In her world, everything she did was justified, whether it was by the Bible or whether it was by her whole foods belief in everyone eating healthy food. So she doesn't want to put anything in her children's bodies that would -- would harm them.

In theory, that sounds good. She -- she wants to do all of those things because she doesn't believe in synthetic medications. She doesn't believe in preservatives in your food. But yet she is willing to go to medical studies and let people put anything in her body that she doesn't even know what it is to earn herself some cash.

It's excuses, Your Honor. Everything is an excuse. It's not what she believes. It's not what's important. She says that the Bible has shaped her life in such a manner. She said the Bible was the word of God, that it was her moral compass, that he speaks to her through the Bible, God does, and that she reads it every day. And she tries to teach her 3 girls. She shapes her discipline and parenting based on the Bible.
. . .
She talks about [the Bible] being her moral compass. Again, it's just excuses, Your Honor, because her entire life is -- is not following the moral compass of the Bible. She has five children with four men that she has not been married to. In the Bible, that's adultery. So it's okay for her to not follow the Bible for her own personal gain, but when it comes to her children, we are going to use that Bible so that we can spare the rod or spoil the child.

Defense counsel objected that the prosecutor's argument was improper and a personal attack on Defendant. The trial court overruled the objection.

## Discussion

Defendant raises two points on appeal. In her first point, she argues the trial court erred in denying her motion for judgment of acquittal on Count IV. She alleges the evidence was insufficient to prove the existence of a substantial risk to Victim's life, body, or health and that Defendant failed to reasonably respond to that risk. In her second point, Defendant argues the trial court abused its discretion in overruling her objection to the State's closing argument, in which the prosecutor implied that Defendant was disingenuous about her belief in the Bible because she had

multiple children out of wedlock with different fathers. She requests we reverse her convictions on Counts I, II, and IV and remand for a new trial.

*Final Judgment*

As a threshold matter, the State contends the appeal should be dismissed for lack of a final judgment. As the State correctly points out, our statutory authority to consider a criminal appeal requires a final judgment. *See* Section 547.070 (authorizing appeal "[i]n all cases of final judgment rendered upon any indictment or information").[2] The State also is correct that a suspended imposition of sentence is not a final judgment. *See State v. Hotze*, 250 S.W.3d 745, 746 (Mo. App. E.D. 2008). Thus, the State argues that, because the trial court suspended imposition of sentence on Counts V and VI, the judgment is not final and the entire appeal must be dismissed. The State relies primarily on our Supreme Court's decision in *State v. Waters*, 597 S.W.3d 185 (Mo. banc 2020).[3]

*Waters* was not a case in which imposition of sentence was suspended on some counts and not others. Rather, in *Waters*, a jury found the defendant guilty on two counts but was unable to resolve two remaining counts, resulting in a mistrial on the remaining counts. *Id.* at 186. The trial court sentenced the defendant on the two counts of conviction, but the other two counts remained pending before the trial court, apparently for retrial, dismissal, or some other resolution. *Id.* In that

---

[2] Unless otherwise indicated, all statutory references are to RSMo (2000) as amended.

[3] The State acknowledges, however, that another panel of this Court recently rejected the same argument and distinguished *Waters* in *State v. Bodenhamer*, No. ED110766, 2023 WL 5022181 (Mo. App. E.D. Aug. 8, 2023), *motion for rehearing/transfer filed* (Aug. 22, 2023). The *Bodenhamer* Court dismissed the appeal as to the count on which imposition of sentence was suspended and reached the merits of the other counts. *Id.* at *3–*5. That has been the approach of this Court generally. *See State v. Johnson*, 456 S.W.3d 497, 500 n.3 (Mo. App. E.D. 2015) (reviewing appellant's challenge to sufficiency of evidence on all counts, except count on which trial court suspended imposition of sentence); *State v. Moore*, 352 S.W.3d 392, 398 (Mo. App. E.D. 2011) (dismissing appeal as to only count on which imposition of sentence was suspended and reaching merits of other counts on which final judgment and sentence were entered); *see also State v. Ndon*, 583 S.W.3d 145, 153 n.1 (Mo. App. W.D. 2019) (noting appellant could not appeal one of two counts because trial court suspended imposition of sentence on that count); *State v. Kimberley*, 103 S.W.3d 850, 853–55 (Mo. App. W.D. 2003) ("In numerous Missouri cases, the appeal has been dismissed as to the SIS count, but allowed to go forward as to all other counts.") (collecting cases).

particular circumstance, the *Waters* Court allowed that "*[m]ost often*, the question of finality in a criminal case is determined by whether a sentence has been imposed," and "[t]he determination that a judgment is final when a sentence has been imposed is, *generally*, consistent with the requirement that a final judgment fully decide and dispose of all issues and leave no questions for future judgment of the court." *Id.* at 187 (emphasis added). Because some counts remained pending before the trial court, the judgment was not final and the Supreme Court dismissed the entire appeal. *Id.* at 189.

Unlike *Waters*, this is not a case in which some mistried counts remain pending before the trial court. The import of this distinction is clear from the State's express concern in *Waters* that, pursuant to the Court's dismissal of the entire appeal, a defendant may be incarcerated on one count with no right to appeal because another count remains pending before the trial court. *Id.* at 188. That concern could be avoided, the Court responded, if the trial court waited to impose sentence "only after disposition of all counts in the case." *Id.* Here, only after disposition of all counts in the case, the trial court sentenced Defendant to terms of imprisonment on Counts I, II, and IV and suspended imposition of sentence on Counts V and VI.

In any event, Defendant appeals from only her convictions on Counts I, II, and IV, and foregoes appeal as to Counts V and VI. Even if *Waters* otherwise applied here, the proposition that we could not consider the merits of Defendant's appeal for lack of a final judgment as to Counts I, II, and IV, the very counts on which sentence has been imposed and the only counts on which Defendant appeals, would seem incongruous. *See Waters*, 597 S.W.3d at 187 ("Most often, the question of finality in a criminal case is determined by whether a sentence has been imposed."). We therefore proceed to the merits of Defendant's appeal as to Counts I, II, and IV.

*Point I: Motion for Judgment of Acquittal*

6

In her first point, Defendant argues the trial court erred in denying her motion for judgment of acquittal on Count IV because there was insufficient evidence of the existence of a substantial risk to Victim's life, body, or health, to which Defendant failed reasonably to respond.

"We review the denial of a motion for judgment of acquittal under the same standard of review used in reviewing a challenge to the sufficiency of the evidence to support a jury's guilty verdict." *State v. Sokolic*, 660 S.W.3d 54, 57 (Mo. App. E.D. 2023) (quoting *State v. Bennish*, 479 S.W.3d 678, 684–85 (Mo. App. E.D. 2015)). When reviewing the sufficiency of the evidence in a bench-tried criminal case, we apply the same standard as in a jury-tried case. *State v. Niederstadt*, 66 S.W.3d 12, 13 (Mo. banc 2002). "The appellate court's role is limited to a determination of whether the state presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty." *Id.* at 13–14. "The Court examines the evidence and inferences in the light most favorable to the verdict, ignoring all contrary evidence and inferences." *Id.* at 14.

Defendant's argument specifically is that, because there was no "necessary treatment" for Victim's suicidal ideations, Defendant did not fail to provide or obtain adequate care for Victim. Without a "necessary treatment," Defendant's argument goes, there could be no "actual or practically certain risk or danger" to Victim from Defendant's failure to act.

Defendant's argument misconstrues the legal standard. A person commits the offense of endangering the welfare of a child in the first degree if she "[k]nowingly acts in a manner that creates a substantial risk to the life, body, or health of a child less than seventeen years of age." Section 568.045.1(1). "Substantial" means "not seeming or imaginary: not illusive," and "risk" means "the possibility of loss, injury, disadvantage or destruction." *State v. Rinehart*, 383 S.W.3d 95, 101 (Mo. App. W.D. 2012) (quoting *State v. Brock*, 113 S.W.3d 227, 232–33 (Mo. App. E.D.

2003)). "Health, as used in section 568.045.1(1), includes a child's physical, mental, emotional, or psychological condition." *Harding v. State*, 613 S.W.3d 522, 532 (Mo. App. E.D. 2020).

"A parent's failure to provide or obtain adequate medical care for a child can be the basis for a child endangerment conviction." *Rinehart*, 383 S.W.3d at 101. This failure to act must pose "an actual or practically certain risk or danger and not just the potential for risk or danger." *Id.* (quoting *Carmons v. State*, 26 S.W.3d 382, 385 (Mo. App. W.D. 2000) (internal quotations omitted)).

Given that a parent's failure to provide or obtain "adequate medical care" can be the basis for a child endangerment conviction, the State's evidence need not rise to the level of Defendant's "necessary treatment" standard. *See Rinehart*, 383 S.W.3d at 101. In *Rinehart*, the Western District of this Court found sufficient evidence of a substantial risk of harm where the victim exhibited serious symptoms of a potentially life-threatening illness requiring professional medical care, and the defendant gave the victim only over-the-counter medication and refused to take the victim to the hospital. *Id.* at 98, 102. Ultimately, the victim died. *Id.* at 99. The *Rinehart* court concluded the jury reasonably could have inferred that the victim's health and life were at actual risk, and the defendant's failure to provide medical care created a substantial risk to the victim's life, body, or health. *Id.* at 102.

Here, as in *Rinehart*, the State elicited sufficient evidence from which a trier of fact reasonably could find an actual, substantial risk to Victim's life, body, or health from Defendant's failure to provide or obtain adequate medical care. Victim confided to Defendant that she was having suicidal ideations and had developed a detailed plan to commit suicide. In response, Defendant did nothing. When Victim's brother confronted Defendant and told her she needed to do something, Defendant still did nothing. Even when DFS intervened and told Defendant that

8

Victim needed a psychological evaluation and demanded she be taken to the hospital within 24 hours, Defendant still resisted and delayed taking Victim to the hospital. Once Victim was hospitalized, Defendant refused medication. Upon being released, Victim received no additional treatment and was hospitalized three or four more times.

From this evidence, viewed in the light most favorable to the verdict, a trier of fact reasonably could conclude, as did the trial court, that Defendant created an actual, substantial risk to Victim's life, body, or health by failing to provide or obtain adequate medical care. Point I is denied.

*Point II: Closing Argument*

In her second point, Defendant argues the trial court abused its discretion in overruling her objection to the State's closing argument, in which the prosecutor implied Defendant was disingenuous about her belief in the Bible because she had multiple children out of wedlock with different fathers. She characterizes the State's argument as an impermissible personal attack and requests a new trial on Counts I, II, and IV. The trial court did not abuse its discretion in overruling Defendant's objection.

A trial court's rulings during closing argument will be reversed only if the court abused its discretion. *State v. Tate*, 561 S.W.3d 483, 490 (Mo. App. E.D. 2018). "An abuse of discretion occurs if the ruling is 'clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *Id.* (quoting *State v. Matthews*, 33 S.W.3d 658, 660 (Mo. App. S.D. 2000)). A trial court retains broad discretion in controlling closing arguments. *State v. Craft*, 669 S.W.3d 719, 728 (Mo. App. E.D. 2023). "Closing arguments must be examined in the context of the entire record." *State v. Tramble*, 383 S.W.3d 34, 37 (Mo. App. E.D. 2012) (quoting *State v. Deck*, 303 S.W.3d 527, 540 (Mo. banc 2010)).

9

"Parties are allowed wide latitude during closing arguments; however, counsel may not stray beyond the evidence presented to the jury, suggest special or personal knowledge, or make ad hominem attacks designed to inflame the jury." *State v. Rasheed*, 340 S.W.3d 280, 286 (Mo. App. E.D. 2011). In the present case, the prosecutor argued that Defendant had an excuse for everything and that she justified her failure to obtain adequate medical care for Victim with her beliefs in the Bible, whole foods, and natural remedies. The prosecutor pointed out the inconsistencies of Defendant's testimony with the testimony of the other witnesses, with Defendant's having five children with four men to whom she was not married, and with her willingness to engage in medical studies to earn money. Based on those inconsistencies, the prosecutor properly assailed Defendant's credibility. "A prosecutor may 'comment on the credibility of the defendant as a witness and assert the improbability and untruthfulness of his testimony.'" *State v. Brooks*, 158 S.W.3d 841, 853 (Mo. App. E.D. 2005) (quoting *State v. Burnett*, 931 S.W.2d 871, 875 (Mo. App. W.D. 1996)); *see also State v. Dominguez-Rodriguez*, 471 S.W.3d 337, 350 (Mo. App. E.D. 2015) ("Commentary on a defendant's credibility is proper in a prosecutor's closing argument.").

The prosecutor no more attacked Defendant's belief in the Bible than her beliefs in whole foods and natural remedies. The point was not to disparage Defendant's religious faith or that she had lapsed, but to assert the untruthfulness of her testimony by highlighting its various inconsistencies.[4] Defendant's credibility as a witness was fair game for the prosecutor's closing argument, and the trial court did not abuse its discretion in overruling Defendant's objection.

Point II is denied.

---

[4] Disparaging Defendant's religious faith, like any personal attack "designed to induce a jury to act on passion or prejudice," would have been improper argument. *See generally Dominguez-Rodriguez*, 471 S.W.3d at 350 (citing *State v. Banks*, 215 S.W.3d 118, 121 (Mo. banc 2007)). That is not what happened here.

## Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

_____
Cristian M. Stevens, J.

Robert M. Clayton, III, P.J., and

Philip M. Hess, J., concur.